**Sam BERNARD, Jr., Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–245.**

Court of Criminal Appeals of Oklahoma.

July 15, 1975.

As Corrected July 17, 1975.

Leslie R. Earl, Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., James D. Bednar, Legal Intern, for appellee.

## OPINION

BRETT, Presiding Judge:

Appellant, Sam Bernard, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–71–2175, for the offense of Murder, in violation of 21 O.S.1971, § 701, the statute in effect prior to the enactment of 21 O.S.Supp.1973, § 701.1, et seq. His punishment was fixed at Life imprisonment at hard labor. From said judgment and sentence, a timely appeal has been perfected to this Court.

On the evening of November 12, 1971, Theophilus Scoggins, a Tulsa storekeeper, was shot while working in his grocery store and died of his wounds several hours later. Shortly before 9:30 on that evening two neighborhood girls, Rene Hamilton and Erma Hooks, went to Scoggins Grocery Store. At trial both girls testified that there were four people inside the store at the time they entered: a light complected black man with a short Afro haircut, a woman, and two young boys. The man and the woman were standing near the checkout counter. When Rene attempted to pay them for a small purchase, the man made change for her out of his own pocket, returning to her more money than she had originally given. Meanwhile, as Erma testified, the boys were attempting to rush her out of the store by saying that Rene had paid for her purchase as well and by pushing her insistently toward the door. Both girls testified that the telephone had rung repeatedly while they were inside the store, but no one moved to answer it. As the girls walked away, Erma voiced her concern that there was something wrong at the store and they returned to look in the window. The boys had gone, but the man and the woman were still within, standing by the cash register. Rene Hamilton testified that she would not recognize the man in the store were she to see him again; Erma Hooks, however, identified the defendant as that man.

Fay Scoggins, the victim's wife testified that she had left her husband alone in the store at about 7:30 p. m. and returned to their residence located next to the grocery store. Sometime near 9:10 p. m. she heard two sharp reports which she thought little about at that time but, upon later reflection, feared the noise was gunfire. To reassure herself, she telephoned the grocery store; no one answered her call. She went to the store where a group of people had gathered. As she entered the store, she saw a man whom she identified as the defendant trying to pry open a money drawer which was located under the cash register. When she confronted the defendant, and demanded an explanation he told her that Mr. Scoggins had left the store in his care. At that point Mrs. Scoggins decided to call the police and opened the cash register to get a dime for the telephone. It was empty of money. She asked the defendant where the money had gone and he told her that Mr. Scoggins had put it in a bag and taken it with him. Hearing a bumping sound coming from a rear room in the store, Mrs. Scoggins went to investigate and found her husband lying wounded on the floor. She asked for a dime to telephone the police but no one came to her

assistance. The defendant, however, suggested she come with him to his house and use the telephone there. She declined that offer, telling him that she had a telephone at her home next door. Mrs. Scoggins testified that she knew the defendant as a man who came into their store regularly. She identified his woman companion as Rosie Lee Olden also known as Peaches Jones. The defendant left the scene and was not present when the police and the ambulance arrived. Theophilus Scoggins died in the hospital the following morning. No money was recovered from his person.

On cross-examination Mrs. Scoggins testified that when she returned to the store on the night of the shooting she found present, in addition to the defendant and Rosie Lee Olden, Erma Hooks, Rene Hamilton, a man named Hank Ford and his young son, and two teenage boys and a young woman whom she could not identify.

Fay Small, a friend of the defendant, testified for the State that at about 10:00 p. m. on the night that Mr. Scoggins was shot the defendant and Peaches came to her house and, in a great hurry, went upstairs to the bedroom. When she followed the pair upstairs, the witness testified, she found Peaches packing a suitcase with the witness' clothes. Peaches told her that they were all going to Oklahoma City. When she asked why, the defendant and Peaches offered a confused explanation about somebody having been hurt at the Scoggins Grocery Store. The defendant made some remark about having told Mrs. Scoggins to call the police and not wanting to be involved. Soon the police arrived, and either Peaches or the defendant told the witness not to let them in. She talked to the officers briefly at her door but did not tell them that the defendant and Peaches were upstairs in the house. This witness also testified that at the time of the shooting she owned two handguns; that she saw the defendant in possession of one of them, a two shot Derringer, that night and later, in Oklahoma City, she saw him with the other one, a .25 caliber automatic. She testified that after she, Peaches and the defendant arrived in Oklahoma City she learned from a news broadcast that Mr. Scoggins had been shot twice in the head. She testified that at that time she demanded to know what had happened at Scoggins Grocery Store. She started to leave the house where they were staying to look for a telephone but the defendant stopped her by threatening her with a gun. He told her then that while he had not shot Mr. Scoggins, he knew that he would be blamed for it. The defendant and Peaches caught a bus to an unknown destination and the witness returned to Tulsa. She did not see the defendant again until after his arrest.

Leonard Fitchew testified that he had been an inmate of the Tulsa County Jail at the same time that the defendant was incarcerated there awaiting trial on the instant charge. Fitchew testified that, during the course of a conversation with him, the defendant admitted that he shot Theophilus Scoggins while committing a robbery.

The defendant offered no evidence.

Inasmuch as defendant's assignments of error, numbers one and two, pertain to the same alleged improper remark by the Assistant District Attorney in his closing argument, they will be considered together for purposes of this opinion. Defendant first contends that his right to a fair trial was prejudiced by the prosecutor's references in his closing argument to the fact that the co-defendant had not been called as a witness. In his second proposition, the defendant contends that statements by the prosecutor amounted to a comment on defendant's failure to testify. The complained of comments are as follows:

". . . I submit to you, ladies and gentlemen, that there is another person who knows what went on up there that evening. Her name is Rosie Lee Olden. Whereabouts unknown. Fay, do you know where Rosie Lee Olden is? No. Mrs. Scoggins, do you know where she is? No. The State of Oklahoma sub-

poenaed Rosie Lee Olden but there is no way of to get the evidence before you that Sam Bernard tried to get the woman that was with him, the woman that went to Detroit with him—

"MR. EARL: Which we'll object to, ask that it be stricken and the jury admonished.

"MR. HOPPER: It's a comment on the evidence, Your Honor.

"THE COURT: Objection overruled.

"MR. HOPPER: Yes, we would like to have her here and, if Mr. Bernard wanted her here you would see some signs where he had made an attempt to get her here.

"MR. EARL: May we have a running objection to this, Your Honor?

"THE COURT: Yes, you may.

"MR. HOPPER: Because she too, she too could tell what went on that evening, just like Sam did when he told Leonard Fitchew what went on.

"MR. EARL: Your Honor, we would like to have an objection at this time to counsel's statement of what a witness who did not show up would have said if they had been here, move for a mistrial.

"THE COURT: Objection overruled. Motion for mistrial denied." (Tr. 438–439)

In support of his first proposition, defendant cites *Fry v. State*, 91 Okl.Cr. 326, 218 P.2d 643 (1950), wherein this Court cited *Dunkin v. State*, 51 Okl.Cr. 457, 2 P. 2d 285 (1931), which held:

" 'Where defendants are charged in the same information and tried separately, a codefendant is a competent witness only with his consent; where defendants are charged in the same information and tried separately, a codefendant may not be required to testify while action is pending against him; comment on defendant's failure to call his codefendant, not on trial, as a witness is not legitimate argument.' "

However, the *Fry* case went on to hold:

"But such comment is not necessarily reversible error unless it may influence the jury's verdict in a close case. . . ."

 Although we recognize that the remarks of the Assistant District Attorney were improper, it becomes readily apparent, upon careful examination of the record in the instant case, that this contention must fail. The record does in fact indicate that Rosie Lee Olden was originally charged as a co-defendant, but, it goes further to show that all charges against her were dismissed prior to arraignment of the defendant in the case at bar. Therefore, any assertion that this was an improper comment on defendant's failure to call a co-defendant must necessarily fail. Further, we find that the prosecutor properly pursued and made a logical inference from the evidence brought out at trial. It has several times been held by this Court that where a person might be a material witness in defendant's behalf, and he is not placed upon the stand by the accused, nor his absence accounted for, failure to produce him as a witness is a legitimate matter for comment in the argument of the State. See, *Hilyard v. State,* 90 Okl.Cr. 435, 214 P.2d 953 (1950).

In support of his second proposition, the defendant cites 22 O.S.1971, § 701, which provides:

"In the trial of all indictments, informations, complaints and other proceedings against persons charged with the commission of a crime, offense or misdemeanor before any court or committing magistrate in this State, the person charged shall at his own request, but not otherwise, be a competent witness, and his failure to make such request shall not create any presumption against him nor be mentioned on the trial; if commented upon by counsel it shall be ground for a new trial."

 We do not believe that such language amounted to a comment upon the

fact that the defendant did not testify as contemplated by the above quoted statute. In effect, it was a comment upon the defendant's failure to contradict the State's evidence. Even if the remark might infer defendant's failure to testify, we deem it to be a harmless error under the rule of *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967), since, in our opinion, there is no "reasonable possibility that the evidence complained of might have contributed to the conviction." (386 U.S. at 23, 87 S.Ct. at 827) This was not, in our view, "a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts." *Chapman v. California, supra,* 386 U.S. at 26, 87 S.Ct. at 829. Therefore, we find the first two propositions to be without merit.

Defendant's final proposition asserts that the accumulation of errors and irregularities in the trial, when considered as a whole, deprived the defendant of a fair trial. In support of this contention defendant cites the case of *Lovell v. State,* Okl.Cr., 455 P.2d 735 (1969), which held, in the fourth paragraph of the Syllabus:

"When a review of the entire record reveals numerous irregularities that tend to prejudice the rights of defendant, and where a cumulation of said irregularities denies defendant a fair trial, the case will be reversed, even though one of said errors standing alone would not be ample to justify reversal."

Furthermore, defendant asserts that the entire transcript, when read as a whole, is so replete with error and bad faith conduct by the Assistant District Attorney that the defendant was deprived of fundamental due process. However, with the exception of the aforementioned remarks by the prosecutor in closing argument, the defendant does not enumerate the errors of which he complains.

Although it might be possible that under certain circumstances an accumulation of errors might require a new trial, such does not appear to be the situation in the instant case. After a careful review of the record, this Court is unable to perceive numerous irregularities which would justify reversal. Generally speaking, the occurrence of several errors which individually are insufficient to require a new trial would not, by their aggregation, justify the granting of a new trial. This Court said in *Smith v. State,* Okl.Cr., 290 P.2d 170 (1955), regarding this matter that:

"It is our further thought that even a number of errors are insufficient to cause a reversal where such errors are not prejudicial to the substantial rights of the accused, and where the evidence is conclusive of guilt in this case."

See also, *East v. State,* 36 Okl.Cr. 430, 255 P. 157 (1927) and *Igo v. State,* Okl.Cr., 267 P.2d 1082 (1954).

Accordingly, finding no error prejudicial to the substantial rights of the defendant, it is our opinion that the judgment and sentence appealed from should be, and the same is hereby, *affirmed.*

BUSSEY and BLISS, JJ., concur.