**William McKinley PROVO, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–516.**

Court of Criminal Appeals of Oklahoma.

June 20, 1977.

Rehearing Denied July 6, 1977.

John T. Elliott, Public Defender, Oklahoma County, Frank Muret, Asst. Public Defender, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

OPINION

BUSSEY, Presiding Judge:

Appellant, William McKinley Provo, hereinafter referred to as defendant, was charged in the District Court, Oklahoma

County, Case No. CRF–75–130, with the offense of Murder in the First Degree, in violation of 21 O.S.Supp.1973, § 701.1. He was convicted by a jury and sentenced to death. From said judgment and sentence, defendant has perfected an appeal to this Court.

The State's evidence showed that on January 8, 1975, a jewelry store in Oklahoma City was robbed. The owner was severely beaten and died several days later from head injuries. Defendant was arrested the day after the robbery while attempting to sell some rings stolen from the jewelry store to a pawn broker. Defendant was brought to the police station where, on January 9, 1975, he made two conflicting statements, one written and one oral, concerning where he had obtained the rings. On January 9, defendant also executed a search waiver for his apartment, which revealed more jewelry stolen during the robbery. On January 10, defendant gave another written statement in which he admitted full complicity in the crime, and led police officers to a trash container in which he had placed the murder weapon, a dummy video tape recorder which he had pried from a wall inside the jewelry store, and several other items connected with the crime. Defendant's palm print was found inside the jewelry store.

In his first assignment of error defendant contends that the trial court erred in admitting into evidence statements of the defendant for the reason that evidence at the trial showed that the *Miranda* warnings were defective.

There were three statements of the defendant admitted into evidence, one oral and two written. When defendant was first arrested he made an oral statement that he had purchased the jewelry from an unknown person. At trial Officer Jackson testified that prior to this statement, Detective Kirby had given defendant his *Miranda* rights. Kirby was not present to testify at this trial, but by stipulation of the parties testimony he had given at a prior proceeding was read into evidence. This testimony indicated that Officer Kirby gave defend-

ant an oral *Miranda* warning on the 9th of January. Subsequent to this, on the 9th, defendant gave a written statement which indicated that he and two others had robbed the jewelry store, but that it was not he who had beaten the store owner. This statement contained a written rights notification and waiver, signed by the defendant. Officers investigated the account given in the first written statement and then questioned defendant again. Defendant was orally given *Miranda* warnings according to the testimony of Detective Kirby, and defendant signed a second rights notification waiver, which is contained in his second written statement. In this second statement defendant indicated that he and he alone had committed the robbery, and beaten the store owner.

■ Defendant urges that the following testimony by Officer Jackson should be held to be error:

"Q. Did anybody ask him whether he could afford an attorney or not?

"A. He did not ask for an attorney. He was advised that if he could not afford one, one would be appointed *by the Courts if charges were filed.*" (Emphasis added)

The above statement was made during an in camera hearing on the admissibility of defendant's statements. Testifying before the jury, Officer Jackson made essentially the same statement:

"Q. Prior to that questioning there did Mr. Kirby advise Mr. Provo of anything?

"A. Detective Kirby advised Mr. Provo of his necessary Constitutional rights pertaining to the *Miranda* warning. This was that he had the right to have an attorney present. That anything he said to us could be used against him in Court. He had the right to have an attorney present; that if he could not afford an attorney, *one would be appointed to him if charges were filed,* and that would be a public defender. After advising him of these rights, *he was also advised that if he did wish to waive that right to remain silent and talk to us he could, and if he wanted to stop at any time he had that*

*right, and to have an attorney present.* After advising him of these rights he replied in the affirmative, that he did understand these rights." (Emphasis added)

In *Schorr v. State,* Okl.Cr., 499 P.2d 450 (1972), we held that such language as that emphasized above was error; however, in *Rowbotham v. State,* Okl.Cr., 542 P.2d 610 (1975), we reversed our holding in *Schorr,* finding instead that language of the sort emphasized above was not error when the warning set forth in *Rowbotham v. State,* supra, was given. Both voluntary statements of January 9, 1975, and January 10, 1975, contain the following language, in pertinent part:

" . . . I, the undersigned, WILLIAM McKINLEY PROVO, . . . knowing that I may have an attorney in my behalf present and that I do not have to make any statement nor incriminate myself in any manner. I make this statement voluntarily, of my own free will, knowing that such statement could later be used against me in any court of law, and I declare that this statement is made without any threat, coercion, offer of benefit, favor or offer of favor, leniency or offer of leniency by any person or persons whomsoever, and that if I cannot afford an attorney, that one will be appointed by the court free of charge. I also understand that I may stop answering questions at any time that I desire, or stop the questioning for the purpose of consulting an attorney.

"Do you understand your rights as listed above? YES.

"Are you willing to waive these rights and give a statement? YES."

This language is substantially the same as that which appears in *Rowbotham v. State,* supra. We are of the opinion that defendant received an adequate warning of his constitutional rights, in accord with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Rowbotham v. State,* supra, · before he gave each of the statements outlined above. Defendant's first assignment of error is therefore without merit.

In his second assignment of error defendant urges that the trial court erred in admitting into evidence, over defendant's objection, the fruits of the search of defendant's apartment, which was conducted pursuant to a written waiver. This waiver recited that defendant had the right not to have his residence searched, and was signed by him. The waiver was obtained on January 9th, while defendant was in custody. Testimony indicated that defendant gave officers the key to his apartment. The search yielded jewelry identified as having been stolen during the robbery.

Defendant urges two grounds upon which we should hold the consent to have been invalidly obtained. He first urges that because of the "defect" in the *Miranda* warnings, noted in defendant's first assignment, defendant was not properly advised of his rights, and thus under the rule in *Schorr v. State,* supra, the search was invalid. In *Schorr* we stated:

" . . . We must legally conclude that a consent to search, given during custodial interrogation must, as a matter of law, be preceded by a proper *Miranda* warning. . . . "

In *Rowbotham v. State,* supra, we did not overrule the above quoted language, but rather we overruled that portion of the *Schorr* decision which indicated that *Miranda* warnings were improper if they contained language of the sort given in *Schorr,* *Rowbotham* and the instant case. Thus, since we hold that the *Miranda* warnings given prior to the consent to search was obtained were proper, defendant's first proposition is without merit.

■ Defendant also urges that a view of the totality of the circumstances surrounding the giving of this consent reveals its involuntariness, and thus under *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the search should be held invalid.

We are not convinced by this argument and even if we were, a review of the evidence reveals that if the jewelry found in-

side defendant's apartment pursuant to the search were to be excluded, the other evidence of guilt was so overwhelming as to render its admission harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). We thus conclude that the error complained of, if error at all, neither resulted in a miscarriage of justice nor constituted a substantial violation of a constitutional or statutory right and therefore was harmless. Title 20 O.S.1971, § 3001.

■ In defendant's third assignment of error he objects to Instruction No. 5 as given by the trial court. We need only note that defendant made no objection at trial to this instruction, nor did he raise it in his motion for new trial. Failure to object to the instruction constituted a waiver and it cannot be raised for the first time on appeal. *Lemmon v. State,* Okl.Cr., 538 P.2d 596 (1975) and *Hover v. State,* Okl.Cr., 471 P.2d 950 (1970).

■ Defendant's final assignment of error is that 21 O.S.Supp.1973, § 701.3, providing for the death penalty upon conviction of murder in the first degree, 21 O.S.Supp. 1973, § 701.1, is unconstitutional. We agree. See, *Riggs v. Branch,* Okl.Cr., 554 P.2d 823 (1976). Defendant's sentence will accordingly be modified from death by electrocution to life imprisonment.

For the foregoing reasons, the judgment and sentence is MODIFIED to Life imprisonment, and otherwise AFFIRMED.

BLISS and BRETT, JJ., concur.