Hossein ASSADOLLAH, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–121.

Court of Criminal Appeals of Oklahoma.

July 8, 1981.

T. Hurley Jordan, Public Defender, Demetri Anastasiadis, Asst. Public Defender, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., David W. Lee, Asst. Atty. Gen., for appellee.

## OPINION

PER CURIAM:

The appellant, Hossein Assadollah, was convicted in Oklahoma County District Court, Case No. CRF–77–1291, of the crime of Murder in the First Degree, pursuant to Laws 1976, 1st Exec.Sess., ch. 1, § 1, now 21 O.S.Supp.1980, § 701.7 A. He now appeals his sentence of life imprisonment.

At about 7:30 on the morning of April 4, 1977, Mary Heath and her son Michael J. Higgenbotham left their home on their way to work, traveling at a rate of about 20 miles per hour on Grand Boulevard in Oklahoma City. As they approached S.W. 18th Street, they observed a green Chevrolet parked in the parking lot of the Kerr Village Apartment Complex. They both observed what appeared to be a fight taking place in the vehicle. Mrs. Heath drove a short way down the street, turned around and passed by the vehicle again. As they passed the vehicle a second time, the male in the green Chevrolet appeared to sit upright and look out the windshield directly at them. They proceeded back to their home and Michael Higgenbotham went into the house to call the police. Mrs. Heath remained in front of her home so that she could continue to observe the activities in the Chevrolet; she saw a man leave the Chevrolet, enter another vehicle and depart from the area. Shortly thereafter Oklahoma City Police Officer Larry Foreman arrived. He was directed to the green Chevrolet by Michael Higgenbotham where he found the body of the victim, Tami Jo Assadollah.

Mrs. Heath and her son described the action in the car as a man striking down at something. They described the man as having dark hair, a moustache and dark complexion. Officer Foreman immediately radioed for homicide assistance, the medical

examiner and for his own supervisor. During the investigation the officers found the victim's purse and from the contents of the purse identified the victim and her residence. The police went to her apartment and examined it for any signs of disturbance but found none. Among the items observed in the apartment was a frozen package of unwrapped meat in the sink. The significance of this item relates to the appellant's explanation to the doctor in the hospital emergency room of the cut on his left hand. Lacerations extended from his index finger across the palm to the little finger of his left hand. He explained that he had cut his hand while attempting to cut through frozen meat with a steak knife. When he was arrested he was taken to the emergency room for treatment.

During the investigation of the apartment, an Iranian by the name of Rod Bahramy came to the apartment seeking the whereabouts of his friend Hossein Assadollah. He was briefly interrogated by the police but was permitted to depart. From the information obtained during the initial investigation, the police issued a radio description of the appellant, giving his name and authority to arrest him. Hossein Assadollah was arrested at approximately 1:30 p.m. that same day in a yellow Dodge Charger owned and being driven by Rod Bahramy. Defendant was incarcerated without bail on a charge of murder and Rod Bahramy was arrested as a material witness. After Rod Bahramy posted bail, he was released; however, at the time of trial he failed to appear.

During the investigation numerous photographs were taken of the victim's body as it lay in the green Chevrolet; one photograph in particular was taken of the midriff part of the victim's body from the neck to the lower waist. This photograph revealed the location and number of times the victim had been stabbed with some sharp instrument.

The pathologist testified that the victim had been stabbed in the chest and abdomen seven or eight times and had an additional seven or eight wounds in the hands and arms. She died from the loss of blood. He also testified that he was unable to state with certainty whether or not the instrument used was a knife, although he did testify that the wounds had been caused by a sharp instrument. The instrument used to cause the death of the victim was never located. In the prosecution of appellant, the State introduced the testimony of 28 witnesses and called two witnesses for rebuttal testimony.

I

In his first assignment of error, the appellant asserts that the trial court erred in admitting four color photographs of the victim's body. The appellant argues not only that the photographs were highly inflammatory, but also that they had no probative value.

■ The rule is that admissibility of demonstrative evidence such as photographs is a question of legal relevance for the trial court. When the probative value is not outweighed by the danger of prejudice to the defendant, the photographs are admissible. *Oxendine v. State*, 335 P.2d 940 (Okl. Cr.1958).

■ In support of his contention that the questioned photographs were not relevant to the issues before the court, the appellant cites *Bills v. State*, 585 P.2d 1366 (Okl.Cr. 1978), wherein this Court, applying the *Oxendine* guidelines, held admissible color pictures of the victim's body. The photos in *Bills* corroborated the findings of the pathologist, showing both the size of the weapon and the force of its thrust. In *Deason v. State*, 576 P.2d 778 (Okl.Cr.1978), photographs accurately depicted the victim and the scene of the crime, as well as corroborated the testimony of the pathologist who performed the autopsy.

As these holdings illustrate, the standard for relevance as applied to photographs has been given wide latitude in this jurisdiction. The instant case demonstrates all of the elements determinative in the cited holdings: corroboration of the pathologist's testimony and depiction of the scene of the

crime. The photograph of the autopsy scene allowed the jury to determine the type of weapon that might have been used to commit the crime, as well as the number of stab wounds in the body. Therefore we hold that the trial court did not abuse its discretion in admitting the photographs into evidence because their probative value outweighed any prejudice to the appellant.

## II

■ The appellant's second allegation is that the trial court erred in admitting the testimony of the victim's mother, June Hatfield, that her daughter had shown her a knife and said to her that the appellant had threatened her with a knife. The appellant contends that this violated the hearsay rule and one of its underlying purposes, that is, to afford a defendant his constitutional right to confrontation.

An in-camera hearing was held concerning the testimony of June Hatfield. Much of the testimony the State had intended for her to give was excluded by the trial court in that hearing.

In raising this issue on appeal, the assistant public defender confuses June Hatfield's in-camera testimony with that given by her in the presence of the jury. On direct examination, Mrs. Hatfield testified that she saw a knife at her daughter's home about a week and one-half before the murder. The witness spoke from direct observation. She did not repeat her in-camera testimony in which she had stated that her daughter told her that the appellant had threatened her with a large knife. No hearsay problem is present.

Mrs. Hatfield also testified that she had seen a similar knife at the Sheraton Hotel, the appellant's place of employment. Her drawing of that knife was admitted into evidence. Again, this is not hearsay, but testimony based upon direct observation by a witness, on the stand, subject to cross-examination. The prosecutor carefully adhered to the trial court's in-camera rulings and did not allow objectionable hearsay evidence in the jury's presence during Mrs. Hatfield's direct examination.

The Assistant Public Defender's reliance upon Shakespeare's Richard II, Act I, Scene I, as authority, is misplaced and accordingly we are of the opinion that this assignment of error is without merit.

## III

■ The appellant's third assignment of error asserts that the admission into evidence of Rick Hatfield's conversation with the victim, two weeks before her death, was hearsay and constituted reversible error.

The conversation to which Rick Hatfield testified occurred over the telephone, and it was admitted by the trial court under the excited utterance exception to the hearsay rule. The only difficulty here is the appellant's claim that Rick Hatfield changed his testimony so as to bring it within the hearsay exception.

We hold that the trial judge was correct in admitting the testimony of Rick Hatfield under the exception to the hearsay rule as an "excited utterance." If Rick Hatfield's testimony before the jury differed from his in-camera testimony, counsel was free to point out such discrepancies to the jury during cross-examination to attack the credibility of the witness. The proposition of error is without merit.

## IV

■ The appellant's fourth and fifth assignments of error will be treated together. He asserts that State's Exhibit No. 15 and the testimony of Judy Hoover and June Hatfield with reference to it were improperly admitted into evidence. State's Exhibit No. 15 is a picture of a knife drawn by the victim's mother resembling a knife shown to her by the victim a week before the killing. The testimony of Judy Hoover went to show that she had seen a kitchen knife in the victim's apartment two weeks before the crime and that she had gone with the victim's mother to the Sheraton Hotel kitchen in search of that knife. The appellant worked at the Sheraton Hotel kitchen. The knife was never found.

There are three issues involved here: First, the admissibility of the testimony of Judy Hoover and June Hatfield; second, the admissibility of State's Exhibit No. 15; and, third, the nature of the errors, if any.

We find no error in admitting the testimony of both June Hatfield and Judy Hoover. They testified as to their personal observations and actions, and the appellant had his right to cross-examine and impeach their testimony.

More difficult is the issue of the drawing. It is the general rule in this jurisdiction that such matters are for the discretion of the trial court and that, absent an abuse of discretion, no error will lie. *Wofford v. State*, 581 P.2d 905 (Okl.Cr. 1978). This discretion involves the balancing of the probative value of logically relevant evidence against the danger of unfair prejudice to the defendant. The real issue here is not the admissibility of the drawing of a knife because clearly the drawing had no probative value going to any material issue. The testimony of Judy Hoover and June Hatfield was all that was relevant, and the drawing was tenuous at best. The real issue is whether the jury was prejudiced when shown a picture of a knife that anyone could draw.

We find that the jury could not have been impressed to the point of making this error a reversible one. If anything was going to inflame the jury, it would have been the testimony of either June Hatfield or Judy Hoover, not the drawing. Our jury system rests on the assumption that the jury is composed of reasonable, objective, impartial persons who will not be shaken by viewing a drawing of a knife. Therefore, we find this proposition to be without merit.

## V

The appellant's sixth assignment asserts reversible error due to the prosecutor's statements both in closing and during the trial regarding the unavailability of a witness. The appellant contends these statements implied to the jury that the defense was hiding the witness. The complained of comments are as follows:

MR. BREWER: For the day, Your Honor, I'd like to keep him in reserve.

\* \* \* \* \* \*

MR. McKINNEY: We agree to have him available just like they agreed to have Mr. Bahramy present.

The prosecutor made the following comment during closing:

. . . I would say 7:10 or 7:05 or somewhere in that area that this all started. Where is this Mr. Bahramy? Mr. Cook represents him. Where is he?

The general rule in Oklahoma is that where a person might be a material witness in a defendant's behalf and he is not placed upon the stand by the accused nor his absence accounted for, failure to produce him as a witness is a legitimate matter for comment in the argument of the State. See *Hilyard v. State*, 90 Okl.Cr. 435, 214 P.2d 953 (1950); *Bernard v. State*, 538 P.2d 1109 (Okl.Cr.1975). In *Wright v. State*, 531 P.2d 696 (Okl.Cr.1975), this Court stated that a reversal can be based upon improper argument only where argument by the State is grossly improper and unwarranted upon some point which may have affected the defendant's rights.

In the instant case, the absent witness, Mr. Bahramy, was undoubtedly a material witness. We find that the prosecutor properly pursued and made a logical inference from the evidence brought out at trial. Furthermore, the cases cited by the appellant are distinguishable in that the prosecutor's statements do not imply that the appellant's counsel was hiding Mr. Bahramy, nor do they indicate that Mr. Bahramy's testimony would have been detrimental to the appellant.

## VI

The appellant's second supplemental assignment of error renews his objection to the admission of June Hatfield's testimony concerning her search for the butcher knife. We find this supplemental assignment of error to be without merit in that the appel-

lant has failed to cite any authority in support of this argument. The original assignments of error four and five dispose of this issue.

## VII

 In his first supplemental assignment of error, appellant challenges for the first time the instruction given under the provisions of 21 O.S.1971, § 702. No objection was interposed at the beginning of this instruction; nor was it presented in appellant's motion for new trial; assigned as error in his petition in error; or argued in his original brief. This assignment of error has not been preserved for review on appeal.

In *Provo v. State*, 565 P.2d 719 (Okl.Cr. 1977), we noted that where a defendant had neither objected to an instruction at trial, nor raised it in his motion for new trial, failure to object to the instruction constituted a waiver and it cannot be raised for the first time on appeal. See also *United States v. Marx*, 485 F.2d 1179 (10th Cir. 1973), where the court stated: "Failure to object at trial to instructions given to a jury precludes objection on appeal; hence, this issue has not been preserved for review." *Glazerman v. United States*, 421 F.2d 547 (10th Cir. 1970), cert. denied, 398 U.S. 928, 90 S.Ct. 1817, 26 L.Ed.2d 90.

Appellant also challenges for the first time on appeal the constitutionality of 21 O.S.1971, § 701. This argument is patently frivolous. 21 O.S.1971, § 701 was repealed by the provision of Laws 1976, 1st Exec.Session, ch. 1, § 1, now 21 O.S.Supp.1980, § 701.7, which became effective July 24, 1976, and under which appellant was convicted. No objection was interposed to the provisions of 21 O.S.Supp.1980, § 701.7, nor to the instructions given under it. In accordance with *Provo* and *Marx*, supra, this assignment of error has not been preserved for review on appeal.

Finding no error which would justify modification or reversal, judgment and sentence appealed from is Affirmed.

BUSSEY and CORNISH, JJ., concur.

BRETT, P.J., concurs in part and dissents in part.

BRETT, Presiding Judge, concurs in part and dissents in part:

I concur that appellant should stand convicted, but I would modify the judgment to First Degree Manslaughter and modify the sentence to forty-five (45) years' imprisonment.

In a supplemental assignment of error, the issue is proof of intent, which is specifically required by the statute under which the appellant was convicted. Appellant contends that he was denied his right to due process by the court's following instruction to the jury,[1] which allegedly relieved the State of its burden to prove each and every element of the crime:

> The design to effect death may be inferred from the fact of the killing, unless the circumstances raise a reasonable doubt as to whether or not such design existed.

This instruction is in accord with 21 O.S. 1971, § 702, which reads as follows:

> A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt as to whether or not such design existed.

I first must note, regarding the appellant's failure to object, our long-standing preference is that any error be cured at trial in order to avoid relitigation. *Daniels v. State*, 554 P.2d 88 (Okl.Cr.1976). However, even a failure to draw error to the attention of the court below will not result in a permanent waiver of that error when it is fundamental. See *Rea v. State*, 3 Okl.Cr. 281, 105 P. 386 (1909). That opinion also defined fundamental error as any error which goes to the foundation of the case or which denies the defendant a right essential to his defense. In accord, *Stowe v. State*, 397 P.2d 693 (Okl.Cr.1964). When intent is an element of the crime, and instruction

---

1. Although the appellant alleges that the impermissible intent instruction is contained in the Court's fifth instruction, it is in the sixth instruction.

absolving the State of its burden to prove that element beyond a reasonable doubt is a fundamental error going to the very foundation of the case. It cannot be waived.

The second consideration in addressing this issue is the effect of the recent United States Supreme Court decision of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), in which the following instruction was held unconstitutional:

> [T]he law presumes that a person intends the ordinary consequences of his voluntary acts.

I cannot avoid the conclusion that the 702 instruction, supra, is, in effect, the same instruction struck down in *Sandstrom*. Like the *Sandstrom* instruction, a 702 instruction shifts the burden of proving intent to the defendant. However, the Supreme Court does not indicate whether *Sandstrom* will be prospective or retroactive, although we have some indication of its effect in that a similar decision, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), was held retroactive in *Ivan v. City of New York*, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972).

However, the retroactivity problem becomes insubstantial in light of the opinions which preceded the trial of this appellant, and which provide a basis for this claim, as *Sandstrom* clearly indicates. A brief analysis follows.

Intent, as an element of the first degree murder statute under which appellant was convicted, must be proved beyond a reasonable doubt. The 1970 decision of *In re Winship*, supra, leaves no doubt in holding that it is a matter of due process that each and every element of a crime be proven beyond a reasonable doubt.

The challenged instruction raises a presumption: That the fact of the homicide leads to an inference of its intentionality. The presumption must be rebutted by the defendant. The United States Supreme Court has consistently held unconstitutional conclusive presumptions as to intent. See *Morrissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), reaffirmed by *U.S. v. U.S. Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). A conclusive presumption of intent is in conflict with the presumption of innocence inherent to each element of the crime. As such, it withdraws from the jury their fact function.

Even a presumption which shifts the burden, as does the 702 instruction, is constitutionally unsound. See *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). In *Mullaney*, the jury was told that malice could be implied, absent a fair preponderance of proof by the defendant that he had acted in the heat of passion on sudden provocation. As the Court said in *Mullaney*, 421 U.S. at 702, 95 S.Ct. at 1891, 44 L.Ed.2d at page 521,

> . . . proving that defendant did not act in the heat of passion on sudden provocation is similar to proving any other element of intent * * * It may be established by adducing evidence of factual circumstances surrounding the commission of the homicide. And although intent is typically considered a fact within the knowledge of the defendant, this does not, as the Court has long recognized, justify shifting the burden to him. [Citations omitted] *Mullaney v. Wilbur*, supra, 421 U.S. at page 702, 95 S.Ct. at page 1891, 44 L.Ed.2d at page 521.

Any use of 21 O.S.1971, § 702, alone, to establish intent, where intent is an element of the crime, is unconstitutional, and its use, in the case before this Court, prejudiced the appellant.

I would, therefore, modify the judgment to Manslaughter in the First Degree, under which a specific intent is not required.