940 F.2d 1539
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
Willie THOMAS, Petitioner-Appellant,
v.
Jack COWLEY, Respondent-Appellee.
 No. 90-6105.
 United States Court of Appeals, Tenth Circuit.
 Aug. 8, 1991.
 
 Before LOGAN, JOHN P. MOORE and BALDOCK, Circuit Judges.
 ORDER AND JUDGMENT*
 BALDOCK, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Willie Thomas (petitioner), a state prisoner, appeals from a district court order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. Petitioner has challenged his convictions and sentences by an Oklahoma court for robbery with a firearm, after former conviction of a felony, on the following grounds:
 
 
 3
 (1) Petitioner was denied due process and equal protection when the trial court allowed the state to inquire of petitioner on cross-examination whether he had been accused of other robberies and an assult (sic) and in allowing the state to present extrinisic (sic) proof of other crimes in rebuttal.
 
 
 4
 (2) The trial court erred in admitting petitioner's confession when it required the defense to bear the burden of proving the illegality of the warrantless arrest and the lack of voluntariness of the confession.
 
 
 5
 (3) The trial court committed fundamental error by failing to give proper instruction on the defense of alibi which should have provided clearly that it was the prosecution's burden to disprove petitioner's alibi beyond a reasonable doubt.
 
 
 6
 (4) The trial court committed reversable (sic) error in refusing to deliver the petitioner's requested cautionary eye-witness (sic) identification instruction.
 
 
 7
 (5) The trial court erred in requiring the jury to deliberate further after having given an "Allen" instruction sua sponte although the jurors had indicated they were hopelessly deadlocked.
 
 
 8
 (6) Prosecutorial misconduct occuring (sic) during the cross examination of the petitioner and during closing argument deprived appellant of a fair trial.
 
 
 9
 (7) The verdict forms and trial court instructions violated petitioner's constitutional right to jury determination of the former conviction issue.
 
 
 10
 (8) Petitioner was denied due process of law and equal protection when the trial court ... failed to administer a bifurcated proceeding as is required under the Oklahoma Statute 22 O.S. Sec. 860.
 
 
 11
 The district court's order dealt fully and fairly with each of the issues raised by petitioner. A copy of the district court's order is attached hereto. Upon our review of the proceedings we find no reversible error.
 
 
 12
 Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED for substantially the reasons set forth in its order.
 
 
 13
 The mandate shall issue forthwith.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT FOR THE
 WESTERN DISTRICT OF OKLAHOMA
 
 14
 Willie Thomas, Petitioner,
 
 
 15
 vs.
 
 
 16
 Jack Cowley, Warden, and The Attorney General of the State
 
 
 17
 of Oklahoma, Respondents.
 
 CIV-89-2115-T
 
 18
 Feb. 28, 1990.
 
 MEMORANDUM OPINION
 
 19
 Petitioner, a state prisoner, appearing pro se and in forma pauperis, brings this action for a writ of habeas corpus, pursuant to 28 U.S.C. Sec. 2254. The Respondents have filed their Rule 5 response, and the matter is at issue. The Court determines that an evidentiary hearing is not necessary, as the issues can be resolved on the basis of the record. Towensend v. Sain, 372 U.S. 293 (1963); Cartwright v. Maynard, 802 F.2d 1203, 1216 (10th Cir.1986), aff'd, 486 U.S. 356 (1988).
 
 
 20
 In this proceeding, Petitioner attacks the validity of his convictions for two offenses of robbery with firearms after former conviction of a felony, Case Nos. CRF-83-5950 and CRF-83-5951 in the District Court of Oklahoma County, wherein the Petitioner was sentenced to 45 years imprisonment on each charge, to be served consecutively.
 
 
 21
 As a preliminary matter, the Court notes that by this habeas corpus action, the Petitioner is attacking a state court judgment for which he is presently in custody. The proper Respondent in such a case is the person having custody over the Petitioner. 28 U.S.C. Sec. 2242; Rule 2(a), Rules Governing Sec. 2254 Cases in the United States District Courts, 28 U.S.C. This is of course the warden of the facility in which the Petitioner is incarcerated, and the Petitioner has properly named the warden as a Respondent. However, the Petitioner has also named the Attorney General as a party Respondent. The Attorney General is a proper Respondent in a habeas corpus action only when the Petitioner is not presently in custody pursuant to the judgment he attacks, but may be subject to such custody in the future. Rule 2(b), Rules Governing Sec. 2254 Cases in the United States District Courts. Since the Petitioner is attacking a state court judgment for which he is presently in custody, it is clear that the warden of the correctional facility is the only proper party Respondent, and the Attorney General should be and is hereby dismissed as a Respondent.
 
 
 22
 The facts relevant to a disposition of this matter are that on November 9, 1983, at approximately 4:00 p.m. a driver for the United Parcel Service (UPS), Jerry Blake, was robbed as he returned to his van after making a delivery in Oklahoma City. Blake testified at trial that he was able to view a man that he later identified as the Petitioner several times at close range, and he gave a description to the police. At approximately 5:15 p.m. that same day, Gill White, another driver for the UPS, was robbed while making a delivery in another part of town. White also testified that he had an opportunity to view the robber on several occasions during the incident. Three weeks later both men identified the Petitioner in a photographic lineup, after the Petitioner had been arrested by Edmond police officers for allegedly planning to rob another UPS truck. Oklahoma City police detective Larry Kettler testified at trial that the Petitioner gave a statement to him admitting that he committed the UPS robberies, but the statement was not reduced to writing. Detective Bemo of the Oklahoma City Police Department testified that he was present during the interrogation when the Petitioner admitted his involvement in the robberies. The Petitioner, for his defense, put on several character witnesses who testified that the Petitioner was honest, well-liked and had a positive reputation in the community. The Petitioner also presented an alibi defense by testifying that he was at his parent's house playing with his nieces and nephews during the time of the robberies.
 
 
 23
 The Petitioner further testified as to the facts surrounding his arrest on November 23, 1983. He testified that he had called a man he had known in the penitentiary and asked that man to drive him to the unemployment office in Edmond. When they stopped at a gas station to ask directions, they were arrested by the police who claimed the men were planning to rob a UPS truck that they were purportedly following. The questioning by Detective Kettler occurred later that day after the Petitioner's arrest. The Petitioner denied that he had confessed to the robberies, and he stated that he was determined to change his life for the better since he had a 1972 conviction for robbery with a firearm, for which he had received a sentence of 50 years.
 
 
 24
 As a first ground for relief, the Petitioner alleges that his rights to due process and equal protection were denied when the state was allowed to inquire during cross-examination and to present rebuttal testimony concerning whether the Petitioner had been accused of other robberies. As noted, the record reflects that the defense put forth witnesses who testified favorably as to the Petitioner's standing in the community, his honesty, and other positive character traits. The trial court then allowed the state to cross-examine the Petitioner on whether he had been accused of certain other robberies, including the robbery of a gas station and other UPS delivery trucks. The Petitioner admitted that he had been accused of the other robberies, but he denied that he confessed his involvement in those robberies to Detective Kettler. Detective Kettler was then allowed to testify in rebuttal that the Petitioner had admitted involvement in the various crimes, including robberies of three other UPS vehicles. Because the trial court found that the Petitioner had "opened up his total and complete character," these questions, and the testimony of Detective Kettler were allowed.
 
 
 25
 State court rulings on the admissibility of evidence are not grounds for habeas relief unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. Chavez v. Kerby, 848 F.2d 1101, 1102 (10th Cir.1988); Brinlee v. Crisp, 608 F.2d 839, 850 (10th Cir.1979), cert. denied, 444 U.S. 1047 (1980) (specifically denying habeas relief for admission of testimony regarding "other acts"). The Petitioner is deprived of a fundamentally fair trial if there is a reasonable probability that in the absence of the erroneous evidentiary rulings, the outcome of the trial would have been different. Tucker v. Kemp, 802 F.2d 1293, 1295-1296 (11th Cir.1986), cert. denied, 480 U.S. 911 (1987).
 
 
 26
 With respect to the inquiry of other alleged robberies during Petitioner's cross-examination, the state appeals court held that the evidence was admissible to rebut evidence of good character put forth by the Petitioner under the provisions of Okla.Stat.Tit. 12 Sec. 2405(A) which allows cross-examination into "relevant specific instances of conduct." The state court further held that the rebuttal testimony by Detective Kettler concerning Petitioner's alleged confession of robberies of other UPS drivers, was admissible "under the common scheme or plan" exception to the "other crimes" prohibition contained in Okla.Stat.Tit. 12 Sec. 2404(b) (1981). The state court finally held that testimony by Kettler as to Petitioner's confession of robberies of a gas station, a shoe store and a beer truck should not have been admitted because they did not fit within any of the exceptions contained in Sec. 2404(b). Since there was a confession by the Petitioner and eyewitness identification (discussed below), the state appeals court held that "the introduction of this extraneous evidence was harmless beyond a reasonable doubt in light of its cumulative effect." This Court agrees with that determination. In addition, the record indicates that the trial judge gave cautionary instructions both after Kettler testified and before the jury was sent to deliberate warning of the limited scope of this testimony. The Petitioner has failed to demonstrate that the rebuttal testimony deprived him of a fundamentally fair trial and would have altered the outcome had it not been admitted. Thus, Petitioner's first ground for relief is without merit.
 
 
 27
 The Petitioner next contends that his constitutional rights were denied because his confession stemmed from the taint of an illegal arrest and thus, was erroneously admitted. The record reflects that an in-camera proceeding was held to determine if the Petitioner's confession was admissible. During the hearing, the investigating detective testified as to the circumstances of the Petitioner's arrest, stating that he was advised by the Edmond Police Department that they received a call from a UPS dispatcher that a car was apparently following one of their trucks. Since there had been several recent robberies of UPS trucks, the Edmond Police Department dispatched a car which followed the vehicle behind the UPS truck. When the officers observed a gun thrown out of the window of the vehicle, it was stopped, and the Petitioner and a companion were taken into custody. Based on these circumstances, the Court ruled that there was probable cause to stop and arrest the Petitioner. Since the Petitioner has had a full and fair hearing on the issue of his arrest, the Petitioner cannot obtain federal habeas review of his claim that his arrest was illegal. Stone v. Powell, 428 U.S. 465 (1976). See also, Davis v. Blackburn, 803 F.2d 1371, 1372 (5th Cir.1986) (per curiam ) (federal habeas courts should dismiss Fourth Amendment claim sua sponte when petitioner had the opportunity to fully litigate claim in state system).
 
 
 28
 As to his claim concerning the alleged tainted confession, the Supreme Court in Miller v. Fenton, 474 U.S. 104 (1985), set forth the standard for collateral review of claims of an unlawfully obtained confession. The standard is whether under the "totality of the circumstances" the challenged confession was obtained in a manner compatible with the requirements of the Constitution. The Court held that the issue of voluntariness is a legal question and a matter for independent federal determination. Id. at 112. It is thus the duty of this Court to examine the record and make an independent determination of the ultimate issue of voluntariness. United States v. Chalan, 812 F.2d 1302, 1307 (10th Cir.1987). However, the trial court's rulings on "subsidiary factual questions," such as whether the suspect was particularly susceptible to police coercion are given deference under 28 U.S.C. Sec. 2254(d)'s presumption of correctness to state court factual findings.
 
 
 29
 The Petitioner's contention in challenging the confession is that the trial court improperly placed the burden of proof of demonstrating the voluntariness of the confession upon the defense. The record reflects that after the Court had adjourned for an in-camera hearing to determine the voluntariness of the confession, Jackson v. Denno, 378 U.S. 368, 376-377 (1964), the trial court, in responding to defense counsel's statement that it was his understanding that the burden of establishing voluntariness was on the prosecution, stated: "You're the one that's wanting to suppress it. The burden's on you. Do you want to--do you want to proceed or don't you?" Subsequently defense counsel called Detective Kettler to testify as to the circumstances of the incriminating statements made by the Petitioner. Detective Kettler testified that he advised Petitioner of his constitutional rights: "I told him that he had the right to remain silent. Anything he said could and would be used against him in a court of law. He had the right to have an attorney or have an attorney appointed, to represent him if he wished one and could not afford him. I advised him if he wanted to make a statement now, he had the right to stop answering questions at any time." (TR-88).
 
 
 30
 Kettler further testified that the Petitioner stated that he understood his rights. Kettler stated that he made no promises of leniency or deals during the interview, and that the Petitioner "would have to make up his own mind" whether or not he wanted to talk with him. Upon cross-examination by the state, Detective Kettler stated that he used no force or coercion to entice the Petitioner to talk to him. The Petitioner then testified in camera as to the voluntariness of the confession. He testified that the detectives began the interview asking him questions about UPS truck robberies and the fact that a gun matching the description of some other robberies was found after being thrown out of the car in which Petitioner was arrested. The Petitioner stated that although he did not remember the detectives reading him his rights, it was possible that they were given to him. The Petitioner further testified that the detectives stated they had "19 to 15 cases to file" on him and if he would cooperate with them, they would file only three charges, with no guarantee of any certain time to serve. The Petitioner stated that at no time did he tell Detective Kettler that he committed the robberies. Based upon this evidence, the trial court ruled that the confession was voluntary and that there was no state coercion in inducing the statements. Thus, Kettler was permitted to testify before the jury concerning the alleged confession.
 
 
 31
 In the jury's presence, Kettler testified as follows:
 
 
 32
 I advised him that he had the right to remain silent; that anything that he said could and would be used against him in a court of law. I advised him that he had the right to talk with an attorney and have an attorney present while he's being questioned if he wished one. And that attorney would be appointed to represent him for any questioning if he could not afford to hire one. I further advised him that he had--if he decided to make a statement now, he still had the right to stop answering questions at any time.
 
 
 33
 (TR-122-123).
 
 
 34
 Kettler further testified that the Petitioner stated that he understood his rights and that the Petitioner agreed to talk with him, that he appeared to be intelligent and communicative and was not intoxicated at the time of the statement. Although there is some variance between Kettler's in-camera testimony and his trial testimony regarding the Miranda warnings that he advised the Petitioner of, the Court finds that Kettler's testimony satisfied constitutional requirements. See Miranda v. Arizona, 384 U.S. 436, 467 (mandating use of Miranda formulation or "other procedures which are at least as effective in apprising accused persons of their right of silence and assuring a continuous opportunity to exercise it"); see also, California v. Prysock, 453 U.S. 355, 359-360 (1981) (per curiam ) (no "talismanic incantation" of Miranda warnings required); Bailey v. Hambey, 744 F.2d 24, 25-26 (6th Cir.1984) (same); Guam v. Snaer, 758 F.2d 1341, 1342-1343 (9th Cir.), cert. denied, 474 U.S. 828 (1985) (same).
 
 
 35
 The Court finds that the state trial court's finding of voluntariness is supported by the record. Coercive police activity is a necessary predicate to finding that a confession is not "voluntary" within the meaning of the due process clause. Colorado v. Connelly, 479 U.S. 157 (1986). In regards to Petitioner's claim that the trial court improperly placed the burden of proof of demonstrating voluntariness of the confession on the defense, the Supreme Court has held that the Jackson v. Denno procedure is not "framed in terms of a burden of proof," but only that the trial judge would admit into evidence confessions found to be voluntary by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 486 (1972). Finally, while formal findings of fact are not required, a finding that a confession is voluntary must be reflected clearly in the record. Simms v. Georgia, 385 U.S. 538, 544 (1967). The record before the Court indicates that the trial court was correct in determining that no coercion was present, and that the Petitioner received the Miranda warnings. Even assuming that Kettler promised him more lenient treatment on pending charges in exchange for his statement as alleged by the Petitioner, this is not in itself enough to render his confession involuntary. United States v. Baldacchino, 762 F.2d 170, 178-179 (1st Cir.1985) (confession voluntary despite promise to bring defendant's cooperation to attention of DEA when the defendant signed a valid waiver, after receiving Miranda warnings twice and no signs of coercion).
 
 
 36
 The Petitioner next contends that the trial court erred in giving an improper jury instruction on the alibi defense. The Petitioner states that the instruction was "fatally flawed by making no mention of which party bares [sic] the burden of proof on the issue." However, as the Respondent indicates, the Petitioner's counsel did not object to this instruction, nor present any alternative instructions. Before obtaining collateral relief based upon a challenge to a jury instruction, the Petitioner must show that the instruction by itself "so infected the entire trial that the resulting conviction violates due process." United States v. Frady, 456 U.S. 152, 169 (1982), reh'g denied, 456 U.S. 1001 (1982), citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977). Thus, the test is whether the instruction had "such an effect upon the trial as to render it so fundamentally unfair that it constitutes the denial of a fair trial in a constitutional sense." Linebarger v. Oklahoma, 404 F.2d 1092, 1095 (10th Cir.1968), cert. denied, 394 U.S. 938 (1969). See also, Ortiz v. Baker, 411 F.2d 263 (10th Cir.1969), cert. denied, 396 U.S. 935 (1969). In McInnes v. Anderson, 366 F.Supp. 983, 987 (E.D.Okla.1973) the Court, in citing Ortiz, held that "the matter of erroneous instructions by the trial court, moreover, is ordinarily only a trial error and of no constitutional significance so as to entitle a petitioner to habeas corpus relief." However, jury instructions must not have the effect of relieving the state of its burden of proof of every essential element of a crime. Sandstrom v. Montana, 442 U.S. 510 (1979).
 
 
 37
 The alibi instruction used by the trial court in the instant case stated the following:
 
 
 38
 The defendant has interposed in this case as one of his defenses what is known in law as an alibi. That is, the defendant was at another and different place at the time of the commission of the crime charged. The law is that such a defense is proper and legitimate and you should consider all of the evidence bearing thereon, whether introduced by the state or the defendant, and if after a careful consideration of all of the evidence in the case, you entertain a reasonable doubt as to whether the defendant was present at the time and place where the crime was committed, if it was committed, then in that event the jury should give the defendant the benefit of the doubt and acquit him.
 
 
 39
 (O.R.-39).
 
 
 40
 Clearly, this instruction did not place the burden of proof of any essential element of the crime upon the Defendant. In earlier instructions, the trial court set out the elements of the offense and instructed the jury that the state had the burden of "proving the material allegations of the information" beyond a reasonable doubt. (O.R.-33-36). The Petitioner has failed to demonstrate how this instruction denied him a fundamentally fair trial.
 
 
 41
 The Petitioner further challenges the Court's failure to give a "cautionary eyewitness instruction." The Petitioner maintains that such an instruction was essential in the case because identification was a crucial element of the evidence at trial "and a serious question exists concerning the reliability of identification." Again, the state appeals court noted that the Petitioner failed to present the requested instruction for the trial court's consideration. Under the cases cited above, such an instruction is not constitutionally required unless the Petitioner can demonstrate that he was denied a fair trial.
 
 
 42
 The relevant evidence concerning the eyewitness identification is that UPS driver, Jerry Blake, testified that he observed the Petitioner walking towards the back end of his truck. Suddenly, the man jumped onto his truck, pulled a gun and said for him to drive away. Blake testified that he made a definite effort to remember what the man looked like as they drove, although the robber told him to look away. Later, as the robber told Blake to get into the back end of the truck, Blake got another look at him. Blake subsequently gave a description of the suspect, stating that he was about five feet eight inches tall, about 140 pounds, about 28 years old, with a "bushy moustache" and wearing a brown stocking cap. Gill White, another UPS driver, testified that he was delivering some packages when a man walked up and asked about a dog chained to a nearby tree. As White went back to his truck, the man again approached and pulled a gun. While again, the man told White not to look at him, White testified that he did in fact look at him. White subsequently called the police, gave them a description of the robber as five feet eight or nine inches, with a moustache, weighing about 150 pounds. He further testified that he twice had the opportunity to view the robber at close range. He stated that the robber had a bushy moustache and wore an orange wool stocking cap.
 
 
 43
 Both Blake and White identified the Petitioner in court and stated that they were sure of their descriptions and testimony, and remained so under vigorous cross-examination. Since no "corrupting effect" of identification procedures has been alleged, Manson v. Brathwaite, 432 U.S. 98, 114 (1977), the Petitioner was not deprived of due process by the admission of identification evidence at trial, as the issue of credibility was a jury question and not cognizable for habeas review. Chavez v. Kerby, supra.
 
 
 44
 The Petitioner's next claim is that the trial court erred when it required the jury to deliberate further after deliberating six hours and reaching a verdict as to guilt on one offense but were deadlocked on the other offense, and on punishment for the first offense. In Allen v. United States, 164 U.S. 492 (1896), the Supreme Court explicitly approved the trial court's practice of admonishing a deadlocked jury to make a further effort to reach a verdict. Such an instruction is referred to as an Allen charge. Id. at 501-502. An order by the judge to the jury to continue deliberations, however, may not be coercive, and this determination rests upon the facts of each case. United States. v. McKinney, 822 F.2d 946, 950-51 (10th Cir.1987). See also, United States. v. Mobile Materials, 881 F.2d 866 (10th Cir.1989) (although preferable to give Allen charge prior to jury deliberations, no per se rule that charge prohibited once the jury has commenced deliberations). Since this issue again concerns general trial error, the standard for review is whether the Petitioner was denied fundamental fairness. Brinlee v. Crisp, supra. The Allen instruction given in the present case, while urging the jury to "deliberate with a view of reaching an agreement," stated that "you should not surrender your honest convictions concerning the weight of the evidence in order to be congenial or to reach a verdict solely because of the opinions of the other jurors." The judge further admonished the jury in a method recently cited with approval in United States v. Smith, 857 F.2d 682, 685 (10th Cir.1988), when he told the jury that "there is no reason to suppose the case will ever be submitted to 12 individuals more intelligent, more impartial and more competent to decide it." Thus, it cannot be said that this instruction was coercive and fundamentally unfair.
 
 
 45
 The Petitioner next contends that he was denied a fair trial because of prosecutorial misconduct. The Petitioner alleges that the prosecutor improperly cross-examined him by asking why his parents and his niece were not present to testify in his behalf, improperly attempted to define reasonable doubt in closing argument, advised the jury it could use evidence of other crimes for improper purposes, and commented on the failure of the Petitioner's girlfriend to testify in support of Petitioner's alibi defense. The Petitioner concludes that "the pervasive misconduct deprived the Petitioner of due process of law and a fair trial."
 
 
 46
 Habeas corpus relief is available for prosecutorial misconduct only when the prosecution's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-648 (1974). Improper remarks by a prosecutor must therefore prejudicially affect defendant's due process rights so as to deprive a defendant of a fair trial. Robison v. Maynard, 829 F.2d 1501, 1509 (10th Cir.1987) (no "reasonable probability" that outcome of trial would have been different, but for improper conduct of prosecutor). The primary concern is whether the Defendant had been deprived of a fair trial. United States v. Washita Construction Co., 789 F.2d 809, 822 (10th Cir.1986).
 
 
 47
 Improper prosecutorial argument will only warrant federal habeas relief if it renders a petitioner's trial or sentencing "fundamentally unfair." Drake v. Kemp, 762 F.2d 1449, 1458 (11th Cir.1985), cert. denied, 478 U.S. 1020 (1986); citing Brooks v. Kemp, 762 F.2d 1383, 1397 (11th Cir.1985), vacated on other grounds, 478 U.S. 1016 (1986); Donnelly v. DeChristoforo, 416 U.S. at 642; see also, Byrne v. Butler, 845 F.2d 501, 507 (5th Cir.1988), cert. denied, 108 S.Ct. 2918 (1988). To establish that a prosecutor's remarks were so inflammatory that they prejudiced the substantial rights of the petitioner, a petitioner must demonstrate either persistent and pronounced misconduct, or that the evidence was so insubstantial that absent the remarks, a conviction probably would not have occurred. Byrne v. Butler, 845 F.2d at 508, citing Bridge v. Lynaugh, 838 F.2d 770, 774 (5th Cir.1988); Felde v. Blackburn, 795 F.2d 400, 403 (5th Cir.1986), cert. denied, 484 U.S. 873 (1987).
 
 
 48
 Upon the Court's review of the evidence, it cannot be said that the actions of the prosecutor denied the Petitioner fundamental fairness so as to warrant federal habeas relief. With respect to the comments of the prosecutor concerning the failure of the Petitioner to call material witnesses to support his alibi defense, including his parents, niece, and girlfriend, Oklahoma law allows comment by the state in such circumstances, Assadollah v. State, 632 P.2d 1215, 1219 (Okla.Crim.1981), and the federal Constitution is not offended by such comments. O'Bryan v. Estelle, 714 F.2d 365, 366-388 (5th Cir.1983), cert. denied, 465 U.S. 1013 (1984). The prosecutor's comments concerning other crime evidence were permissible as rebuttal to the character evidence introduced by the Petitioner, as discussed above. Finally, the other comments made by the prosecutor during closing arguments were not objected to by the Petitioner's attorney at trial and were not considered by the state appeals court for this reason. In light of the evidence of guilt including the Petitioner's confession and two eyewitness identifications, the Court finds that these comments did not deny the Petitioner a fair trial.
 
 
 49
 Finally, the Petitioner contends that the trial court erred by providing verdict forms for the jury which did not provide for an alternative finding of guilt or innocence of his prior conviction, and by instructing for punishment only as a habitual offender, the minimum sentence being ten years imprisonment. This method thus negated the bifuricated procedure which is the normal course of events in a trial where the defendant is charged as a habitual offender, requiring the state, after obtaining a guilty verdict on the principal offense, to then offer proof of the prior offense to the jury in a second hearing. Okla.Stat.Tit. 22 Sec. 860 (1981). However, the Petitioner admitted during cross-examination that he had a prior final conviction, and that he had been represented by counsel. Under Oklahoma law this admission made it permissible for the trial court to proceed in a one-stage adjudication since there was no question of fact for the jury as to the prior offense. See Englebaecht v. State, 569 P.2d 484, 486 (Okla.Crim.1977), citing Jones v. State, 527 P.2d 169, 172 (Okla.Crim.1974); overruled on other grounds, Fulton v. State, 541 P.2d 871 (Okla.Crim.1975). Thus, this alleged trial error does not raise a question of constitutional significance. Brinlee v. Crisp, supra.
 
 
 50
 For the foregoing reasons, the Court finds that the petition for writ of habeas corpus should be denied.
 
 
 51
 IT IS SO ORDERED this 28th day of February 1990.
 
 
 52
 /s/ RALPH G. THOMPSON
 
 UNITED STATES DISTRICT JUDGE
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3