Charles Orville NEWSOM, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–319.

Court of Criminal Appeals of Oklahoma.

Feb. 20, 1974.

Milor & Eakin, Ardmore, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Stan Chatman, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Charles Orville Newsom, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court, Carter County, Case No. CRF–73–53, for the offense of Unlawful Delivery of Marijuana; his punishment was fixed at two (2) years imprisonment and a fine of One Dollar ($1.00), and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Troy Leathers testified that he was employed as a detective with the Narcotics Division of the Lawton Police Department and in the early part of January, 1973, came to Ardmore to conduct a drug investigation at the request of the local authorities; that on January 22nd, at approximately noon, he went to the Friendly Little Dog House Bar and met one Mike Mills. He and Mills went to defendant's duplex and Mills introduced him to defendant. Mills asked defendant about "getting a lid." Defendant replied "okay" and went into a bedroom where he opened a dresser drawer. The drawer contained approximately 16 lids of marijuana and the defendant said: "Pick the one you want." Leathers rummaged through the baggies and picked the largest one, giving the de-

fendant a ten dollar bill in return. He identified State's Exhibit 1 as the baggie which he subsequently turned over to Mr. Warthen of the District Attorney's office.

Defendant stipulated that Wayne Warthen would testify that he received State's Exhibit 1 from Detective Leathers and that in his opinion, after chemical analysis, the exhibit contained marijuana.

Defendant testified that he was 22 years old and started using marijuana while in the Army in Korea. Defendant admitted having the transaction with Leathers concerning the marijuana. Defendant testified that the marijuana did not belong to him, but belonged to Kenneth Royal, who was living with him. He gave the ten dollars he accepted from Leathers to Royal. Defendant further testified that he was not in the business of selling drugs and would only do it as an accommodation to someone; that he did not know how severe the punishment was for using marijuana and that he has not used any since the date of his arrest.

Roxana Newsom, defendant's wife, testified that defendant was a good husband and that he stopped using marijuana since he was arrested.

Various character witnesses testified as to defendant's good reputation in the community.

■ On appeal, the first and third propositions assert that the trial court erred in giving an instruction on parole. The record reflects that after the jury commenced its deliberations, the following note was submitted to the court:

"Please explain the minimum confinement and the minimum fine for this offense? Is there a chance for parole?" (Tr. 82)

The trial court thereupon gave the following instruction, over the objection of defendant:

"The minimum sentence of confinement that the jury can assess is set out in your instructions as two years.

"As to the fine, as set out in your instructions, there is a maximum of $5,000 that can be assessed. The statute does not set any minimum on the fine, only a maximum.

"As to your question concerning parole, the question of parole is not within the province of either the court or the jury, but is strictly an administrative matter within the province of the pardon and parole board and Governor of the State." (Tr. 84)

In Beets v. State, Okl.Cr., 449 P.2d 903, wherein the trial court gave a similar, more detailed, instruction, we stated:

"While we have repeatedly condemned the practice of instructing or advising the jury relative to credits for good time, blood time, etc., we do not feel in the instant case that the remarks of the judge constituted such comment, but rather that he was attempting to explain to the jury that the granting or giving of a parole was an administerial function of the executive branch of the government.

"While it would have been better for the trial court to have simply advised the jury that he had given them all of the instructions and that he could not answer their questions, we do not feel, in the light of the entire record, that the trial judge's remarks were such as to require a reversal or modification."

The record reflects that in denying defendant's Motion for New Trial, the trial court stated:

"So far as the note to the jurors at their request, that the granting of a parole is not in the province of the court or jury, but is strictly within the jurisdiction of the administrative branch of the government. In the first place that is a correct statement of the law. In the second place it was brought on by a remark of counsel to the jury in closing argument, final argument, that the defendant would not be eligible for a parole, which is not a correct statement of the law." (Tr. 101)

We thus conclude that in light of the entire record that the trial court's remarks were not such as to require reversal or modification.

The second proposition contends that the trial court erred in refusing to allow defense counsel to determine whether jurors knew the difference between marijuana, hard narcotics and LSD. We disagree. Although stated only in the Syllabus, it is well established that the applicable law of this State was set forth in Phillips v. State, 24 Okl.Cr. 259, 217 P. 1062, wherein this Court stated:

"The defendant in a criminal action acquires no vested right to have a particular member of the jury panel sit upon a trial of his case until he has been accepted and sworn. Where it is contended that the trial court erred in refusing to permit counsel for defendant to ask a certain question of prospective jurors on their voir dire examinations, the ruling complained of must have resulted in compelling the defendant to accept one or more jurors possessing statutory disqualifications before he has good ground for complaint."

We are of the opinion that whether a juror has personal knowledge of the difference in drugs does not reach the dignity of a statutory disqualification. We, therefore, find this proposition to be without merit.

The final proposition contends that the trial court erred in overruling defendant's Motion for New Trial. Defendant argues that if any of the first three propositions require reversal, then it is obvious that the trial court committed error in overruling the Motion for New Trial. For the reasons previously discussed, we are of the opinion that this proposition is likewise without merit.

In conclusion, we observe that the defendant was afforded a fair trial by an impartial jury and that under the evidence, they arrived at the only possible verdict of guilt. The jury further displayed a complete lack of prejudice by returning the minimum sentence. The judgment and sentence is accordingly affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissenting).

I respectfully dissent to this decision on the basis of this Court's decision in Beets v. State, supra. This decision repeats again such phrases as "While we have repeatedly condemned the practice. . . ." and "While it would have been better for the trial court to have simply advised the jury that he had given them all of the instructions and that he could not answer their questions. . . ." I believe we should take action to implement the meaning of those phrases.

Secondly, the quoted syllabus of Phillips v. State, supra, does not appear in this Court's decision, except as the syllabus. The Phillips case pertains to defense counsel's question of certain prospective jurors, "Will you go into the jury box presuming at this time that the defendant is innocent?" The trial court denied defense counsel's continued use of the question; and this Court stated, "The presumption of innocence is a legal presumption and not a personal presumption as stated by the trial court to the jurors." This Court then made the following holding:

"We hold, therefore, that the record before us as to this assignment of error presents no question disclosing any action of the trial court resulting to the substantial prejudice of the defendant."

Likewise, considering defendant's second proposition alone, I do not perceive any substantial prejudice to the defendant having resulted from the trial court's action; but coupled with defendant's first proposition, I believe this conviction should be reversed and remanded for a new trial.