**Eddie Leroy TRICE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–87–573.**

Court of Criminal Appeals of Oklahoma.

April 15, 1993.

Rehearing Denied June 14, 1993.

Opio Toure and Tim Wilson, Cindy Foley, Asst. Public Defenders, Oklahoma City, for appellant.

Robert H. Macy, Oklahoma County Dist. Atty., Bill R. Weaver, Asst. Dist. Atty., Robert H. Henry, Atty. Gen., M. Caroline Emerson and Carol Price Dillingham, Asst. Attys. Gen., Oklahoma City, for appellee.

## OPINION

CHAPEL, Judge:

Eddie Leroy Trice, appellant, was tried by jury and convicted of First Degree Malice Aforethought Murder (21 O.S.1981, § 701.7) (Count I), First Degree Rape, After Former Conviction of Two or More Felonies (21 O.S.1981, § 1114) (Count II), First Degree Burglary, After Former Conviction of Two or More Felonies (21 O.S.1981, § 1431) (Count III) and Assault and Battery With a Dangerous Weapon, After Former Conviction of Two or More Felonies (21 O.S.1981, § 645) (Count IV) in Oklahoma County District Court, Case No. CRF–87–878, before the Honorable William

R. Burkett, District Judge. The jury found four (4) aggravating circumstances and sentenced appellant to death on Count I and nine hundred ninety nine (999) years imprisonment for each of Counts II, III and IV. We affirm.

Shortly after midnight on February 14, 1987, appellant entered the home where eighty-four year old Ernestine Jones lived with her sixty-three year old, mentally retarded son, Emanuel. Appellant entered the home through a window leading into the bedroom of Ms. Jones. Once inside, appellant savagely beat Ms. Jones with a martial arts weapon known as nunchakus, Emanuel Jones was also beaten by appellant, receiving a broken arm and ultimately loosing an eye as a result of the attack. After beating the victims, appellant raped Ms. Jones and took approximately three hundred dollars ($300.00) from the residence that Emanuel had earned selling aluminum cans.

The body of Ernestine Jones was found by her daughter on the afternoon of February 14, 1987. As a result of information obtained from Emanuel Jones and Archie Landon, appellant's roommate, police secured an arrest warrant for appellant which was executed on February 18.

## ISSUES RELATING TO
## JURY SELECTION

■ In his sixth proposition of error, appellant contends the voter registration list used to compose the jury panel, see, 38 O.S.Supp.1985, § 18, resulted in the systematic exclusion of minorities. Appellant contends such systematic exclusion denied him his rights to equal protection of the laws under the Fifth Amendment[1], and to a jury drawn from a fair-cross-section of the community under the Sixth Amendment. Initially, we note this Court has previously considered and rejected a similar contention, holding that the procedure utilized at the time of appellant's trial for

1. "Although 'the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process."' (Citation omitted). Thus, if a classification would be invalid under the Equal Protection Clause of the Fourteenth Amendment, it is also inconsistent with the due process requirement of the Fifth Amendment." *Johnson v. Robinson*, 415 U.S. 361, 364, 94 S.Ct. 1160, 1164, n. 4, 39 L.Ed.2d 389 (1974).

calling jurors was "racially neutral and not susceptible to abuse." *Fox v. State*, 779 P.2d 562, 566 (Okl.Cr.1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990). Despite our previous holding, we shall examine appellant's allegations in some detail.

■ The requirements for a prima facie showing of an equal protection challenge to jury selection are set forth in *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977):

> The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied. (Citation omitted). Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time.... Finally, ... a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing. (Citation omitted). Once the defendant has shown substantial underrepresentation of his group, he has made out a prima facie case of discriminatory purpose, and the burden then shifts to the State to rebut that case.

*Id.* at 494–95, 97 S.Ct. at 1280. To establish a prima facie violation of the fair-cross-section requirement,

> the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979). Thus, "[w]hile equal protection and fair-cross-section cases are not entirely analogous, ... both violations require a showing of a distinctive group and a substantial underrepresentation of that group in jury venires before a prima facie case is established and the burden of proof shifts." *United States v. Yazzie*, 660 F.2d 422, 426 (10th Cir.1981), *cert. denied*, 455 U.S. 923, 102 S.Ct. 1282, 71 L.Ed.2d 464 (1982).

■ After a review of the motion hearings, we conclude appellant has failed to demonstrate the requisite degree of underrepresentation. Accordingly, he has failed to establish the representation of nonwhites on the jury panel was not fair and reasonable in relation to the number of such persons found in the community. Having failed to make a prima facie showing on either his Fifth Amendment or Sixth Amendment claim, we find no error in the trial court's denial of appellant's motion to challenge the jury selection process. *See Sellers v. State*, 809 P.2d 676, 681–2 (Okl. Cr.1991), *cert. denied*, — U.S. —, 112 S.Ct. 310, 116 L.Ed.2d 252 (1991).

■ In his seventh assignment of error, appellant claims he was denied his right to trial by a jury composed of a fair cross-section of the community by operation of 38 O.S.1981, § 28(A), which allows persons seventy years of age or older to opt out of jury service. Appellant, relying on the 1980 census, claims approximately 6.9% of the total age-qualified population in Oklahoma County were seventy years of age or older. We find appellant has failed to make the requisite showing for a fair-cross-section challenge. *See Duren, supra.* Specifically, we find appellant has failed to meet the first prong of *Duren*, as we have previously held this exemption from jury service does not exclude a sufficiently numerous and distinct group. *Fox*, 779 P.2d at 566; *Moore v. State*, 736 P.2d 161, 165 (Okl.Cr.1987), *cert. denied*, 484 U.S. 873, 108 S.Ct. 212, 98 L.Ed.2d 163 (1987). Nothing in appellant's statistical analysis persuades us to find differently here. Furthermore, we have held that in light of both the higher rate of infirmities suffered by the elderly, as well as the likelihood of substantial hardship if they are compelled to travel or serve lengthy jury terms, the statutory age provision is a reasonable exemption from jury service. *Sellers*, 809 P.2d at 682.

In his eighth assignment of error, appellant claims the trial court erred in excusing veniremen Herron, Cole and Doughty for cause during voir dire without allowing defense counsel an opportunity to rehabilitate them. A prospective juror may be excused for cause because of his or her views on capital punishment if "the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985), *quoting Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980). During voir dire the trial court, speaking to the entire jury panel, asked the following: "[I]f you find beyond a reasonable doubt that the defendant is guilty of murder in the first degree, can you consider both legal punishments, life or death? Anybody who cannot, please raise your hand." Veniremen Herron and Cole raised their hands. The trial judge asked each the following:

> If you found beyond a reasonable doubt that the defendant was guilty of murder in the first degree, and if under the evidence, facts and circumstances of the case, the law would permit you to consider a death sentence, are your reservations about the death penalty such that, regardless of the law, the facts and circumstances of the case, you would not consider the death penalty?

Both responded they could not consider the death penalty. Ms. Doughty's initial response to the same question was that her consideration of the death penalty would depend upon the evidence. However, upon further questioning from the trial court, Ms. Doughty stated that she could not consider the death penalty. The trial court's questioning established none of these potential jurors would consider imposing the death penalty in a proper case, and thus they were properly excluded under the standard enunciated in *Witt.* A review of the transcript of voir dire reveals the relevant questions had been asked and answered. Accordingly, it was not error to deny defense counsel the opportunity to make further inquiry. *See Stouffer v.*

*State,* 738 P.2d 1349, 1361 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988).

In his ninth proposition of error, appellant claims the trial court erred in failing to allow each juror to be questioned separately, apart from other prospective jurors, concerning his or her views on capital punishment. This Court has consistently held there is no right to individual voir dire and the decision to allow the same is properly within the trial court's discretion: *Douma v. State,* 749 P.2d 1163, 1165 (Okl. Cr.1988); *Glenn v. State,* 749 P.2d 121, 126 (Okl.Cr.1988). We have reviewed the transcript of voir dire and find no abuse of discretion.

## ISSUES RELATING TO GUILT-INNOCENCE

In his first proposition of error, appellant alleges his confession was improperly obtained by police and the trial court erred in admitting it. Appellant was arrested at approximately 3:30 a.m. on February 18, 1987, by Oklahoma City Detectives Burke and Mullenix. Appellant was taken to the police station and placed in a holding cell for several hours before he was escorted to an interview room and questioned by Detective Burke. The time that Detective Burke began questioning appellant is uncertain. The arrest report indicates 5:30 a.m. (Court's Exhibit 2), but Detective Burke testified that the time was 6:30 a.m. During this interrogation, appellant was asked—in addition to some questions obtaining statistical information—where he was on February 13, and whether a pair of shoes recovered from a storage shed belonging to the brother of appellant's roommate were his. In response, appellant claimed that he was with a girlfriend on the night in question and that the shoes were not his. Detective Burke did not advise appellant of his *Miranda* rights.

Detective Mullenix entered the room where appellant was being questioned at approximately 8:00 a.m. and read appellant his *Miranda* rights. Appellant stated he understood the rights and wanted to talk to the officers. Detective Mullenix then

asked appellant to read a copy of the affidavit used to secure the warrant for his arrest. After appellant read the affidavit, Detective Mullenix played an audio tape containing statements made to police by appellant's roommate, Archie Landon. After listening to the majority of the tape, appellant asked the detective to turn the tape off and again stated he wanted to talk.

Appellant told the detectives he believed that Emanuel was having a homosexual relationship with his (Emanuel's) nephew. Appellant stated he parked his pick-up about a block away from the Jones' home and walked up to the front door and knocked. According to appellant, Emanuel allowed him inside, but grew hostile and struck appellant after appellant inquired about the homosexual relationship. Appellant claimed after Emanuel struck him, Ernestine began to strike him with a curtain rod. Appellant admitted to striking both Emanuel and Ernestine several times each with the nunchakus before he picked up some money and fled out of a bedroom window. Appellant went back to his truck and drove by the apartment where his girlfriend lived. Appellant did not stop because there were no lights on in the apartment. Appellant claims he next drove to the river where he discarded the pants he was wearing and the nunchakus. Appellant stated he then drove to the apartment he shared with Archie Landon, where he counted the money he had taken from Emanuel's bedroom. According to appellant, he and his roommate then went to buy some alcohol.

Appellant told police that at the time of the altercation, he was wearing a pair of black pants, a blue and white striped pullover shirt, a beige or light tan trench coat with a green liner and a pair of white loafers. Appellant told the officers he put the clothing he was wearing in a bag and placed it near a vacant duplex across the street from his house. Appellant admitted to hiding the white loafers in a storage shed owned by Walter Landon, his roommate's brother.

At the conclusion of appellant's statement, Detective Mullenix asked appellant if he would give his statement on tape. Appellant agreed but stated he wished to speak with a district attorney first. An assistant district attorney was summoned and was present when appellant made the taped confession.[2]

At no time during appellant's first confession, which was not recorded, or his second recorded confession, was the rape of Ms. Jones discussed. Detective Mullenix stated he had purposely omitted any mention of the rape because "it had been my experience that when an elderly woman is raped like that, that most of the times the suspects are extremely reluctant to speak of it." After appellant had completed the taped confession, Detective Mullenix informed appellant the police knew that Ms. Jones had been raped and asked appellant if he had raped her. Appellant responded that he had been drinking wine and taking PCP and that he had raped Ms. Jones. When asked if he wanted to make this admission on tape, appellant stated he was tired and did not want to.

The trial court held an in-camera hearing in accordance with *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), to determine the voluntariness of appellant's confession. Appellant testified during the hearing he made several requests for an attorney: once as he was being transported to the police station; again to Detective Burke prior to the initial interrogation; and, finally to Detective Mullenix. Based upon the well settled principle of law that once a defendant requests counsel questioning must cease and any further interrogation by police is improper, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), appellant contends that his confession was ille-

---

**2.** The assistant district attorney that spoke with appellant, Mr. Jay Farber, was not called to testify. According to Detective Mullenix, who witnessed the conversation between appellant and the assistant district attorney, appellant asked about alcohol and drug rehabilitation programs to which Mr. Farber replied that he was not familiar with the programs and that he would look into it.

gally obtained and that its admission at trial was error.

■ Appellant's claim that he repeatedly asked for counsel is inconsistent with the testimony of Officers Wade Taylor and Joseph VanBeckham, who transported appellant to the police station after his arrest, as well as with the testimony of Detectives Burke and Mullenix. These officers testified appellant made no such request. We find the record adequately supports the trial court's conclusion that appellant did not request an attorney. We shall not disturb that conclusion.

■ Next, appellant asserts he effectively evoked his right to counsel when he asked to speak to a "district attorney." Appellant offers two conditional explanations for his request to see a district attorney. Appellant claims that either Detective Mullenix was mistaken when he testified appellant asked to speak with a district attorney when actually, appellant requested the presence of both a district attorney and a defense lawyer, or that appellant was mistaken as to the role of a district attorney. Under either scenario, appellant claims his right to counsel was invoked and it was error to admit any statements made subsequent to the request. We disagree. We have previously found the record sufficient to support the trial court's conclusion that at no time did appellant request an attorney to represent his interests. Further, we find no evidence which supports appellant's claim that he mistakenly believed a district attorney would act on his behalf. To the contrary, Detective Burke testified during the *Jackson v. Denno* hearing that Detective Mullenix "explained to [appellant] what a district attorney was, and he wanted to talk to a district attorney still." This testimony, coupled with the fact that appellant had previously sustained five (5) felony convictions, makes it inconceivable appellant did not understand the role of a district attorney. Additionally, when appellant spoke to the assistant district attorney, he did not seek legal advice but rather inquired about the availability of drug and alcohol programs in prison.

Accordingly, we find appellant did not invoke his right to counsel.

■ Appellant, again relying on the premise that he requested counsel, next contends that the evidence obtained as a result of a search waiver he signed during the interview with Detective Burke, authorizing the search of his truck, should have been suppressed. While it is true that a request for consent to search made after a defendant requests counsel is improper as it is the functional equivalent of express questioning, *see Kreijanovsky v. State*, 706 P.2d 541, 545 (Okl.Cr.1985), appellant has failed to establish he requested counsel. Thus, we find no error in the admission of evidence consisting of a white napkin covered with blood discovered in appellant's truck. Similarly, appellant claims it was error to admit samples of his hair and blood and saliva taken by forensic chemist Janice Davis. The body samples were taken after appellant signed a document authorizing the seizure. (State's Exhibit 45). We find no error.

■ Next appellant claims his confession was improperly induced when he was asked to read the affidavit for the arrest warrant and listen to the statements of his roommate on tape. Appellant contends these acts, in conjunction with Detective Burke's previous display of the white loafers and the assistant district attorney's statement that he would "check into" drug and alcohol programs, caused him to confess.

Appellant relies upon *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), to support this contention. *Innis* held that after a suspect invokes the right to counsel, all questioning or its functional equivalent must stop. The Court explained that the term " 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* 446 U.S. at 301, 100 S.Ct. at 1689–90.

*Innis* is easily distinguishable from the instant case. In *Innis* the defendant, after receiving the *Miranda* warnings, asked to speak with a lawyer, whereas appellant made no such request and agreed to speak with the officers. Further, appellant's claim he was induced to confess finds no factual support in the record. Appellant agreed to talk with the officers prior to reading the affidavit or hearing the tape. Likewise, nothing the assistant district attorney said could have induced appellant's confession because the statement occurred before the attorney's arrival. The record simply does not support the claim appellant was induced to confess after Detective Burke showed him the shoes and asked if they were his. According to the police report (Court's Exhibit 2), appellant denied owning the shoes or ever having seen them. Detective Burke's questions concerning the shoes occurred before appellant received the *Miranda* warnings. The questions were therefore improper and appellant's responses to them inadmissible. Despite the impropriety of asking the questions, it does not appear that these questions induced appellant's subsequent confession.

■ Finally, appellant contends the method used to obtain the rape confession was improper and his confession to the rape should therefore have been suppressed. As noted previously, no mention was made of the rape until appellant finished giving the taped confession. When specifically asked, appellant admitted he had raped the victim. We find nothing in this procedure that would make appellant's confession to the rape inadmissible.

■ While we reject appellant's proposition that his confession was inadmissible, we share the trial court's concern that appellant was questioned about the crime by Detective Burke prior to receiving his *Miranda* rights. We note none of the statements made prior to appellant receiving the *Miranda* rights were introduced at trial. After a careful review of the record, we specifically find appellant's unwarned statements did not taint the subsequent post *Miranda* confession. *See Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

In his second proposition of error, appellant contends this Court is unable to conduct the mandatory sentence review, *see* 21 O.S.Supp.1985, § 701.13, because the Trial Judge's Report and jury instructions were not made a part of the original record. We note appellee filed a Motion to Supplement the Record which was granted by this Court on September 12, 1988. The supplemented material contains the jury instructions [3] and the Trial Judge's Report. This Court has all the materials necessary to conduct the mandatory sentence review. We therefore find this proposition of error to be meritless.

■ In his third assignment of error, appellant contends the trial court erred in admitting photographs of the murder victim taken at the crime scene. Specifically, appellant objects to the admission of State's Exhibits 10, 11 and 12. State's Exhibit 10 is a profile shot of the victim's head showing injuries to the side of the face. State's Exhibit 12 is a frontal view of the head showing injuries to the face and neck of the victim. State's Exhibit 11 showed the nude body of the victim and the injuries sustained.

The introduction of photographs taken subsequent to a homicide is largely in the discretion of the trial court. *Bennett v. State*, 652 P.2d 1237, 1239 (Okl.Cr.1982). Abuse of discretion may be found only where the evidence is gruesome and the probative value is substantially outweighed by its prejudicial effect. *Kiser v. State*, 782 P.2d 405, 410 (Okl.Cr.1989). Appellant alleges the photographs had no probative value because he never denied beating either victim or killing one victim, and because the cause of death was not contested. We considered and rejected a similar argument in *Williamson v. State*, 812 P.2d 384, 400 (Okl.Cr.1991), and find no reason to hold otherwise here. The probative value

3. Appellee submitted an affidavit signed by the trial judge indicating that the instructions submitted were true and exact copies of the instructions given to the jury in the instant case.

of photographs of murder victims can be manifested in numerous ways, including showing the nature, extent and location of wounds, establishing the corpus delicti, depicting the crime scene, and corroborating the medical examiner's testimony. *Nguyen v. State,* 769 P.2d 167, 171 (Okl.Cr. 1988), *cert. denied,* 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989). In addition to the aforementioned examples, we find that the photographs tended to support the prosecution's theory that the victim was relentlessly attacked. The photos were therefore admitted to cast doubt upon appellant's statements, introduced through his confession, that the victim repeatedly attacked him. We find no abuse of discretion in the trial court's decision to admit the photographs.

 In his fourth proposition of error, appellant alleges the trial court erred in failing to give his requested manslaughter instruction. The trial court gave a first degree manslaughter instruction which was taken verbatim from *Oklahoma Uniform Jury Instructions–Criminal* (OUJI–CR) 455 (1981). Appellant's requested instruction differed from the instruction given in that the requested instruction omitted the element of heat of passion. It is clear from the record that defense counsel felt the trial court's Instruction No. 10(B), was an adequate substitute for the requested instruction. At one point, defense counsel specifically stated "Your Honor, we have received Court's Instructions number 1 through 34. We have reviewed the Instructions and have no objections to them." Counsel's failure to object to the Court's instruction has waived any alleged error. *See Chatham v. State,* 712 P.2d 72, 73 (Okl.Cr.1986).

 In his fifth assignment of error, appellant contends the trial court erred in failing to give his requested instruction defining "incapable of forming specific criminal intent," "incapable of forming special mental element" and "intoxication." (OUJI–CR 736). Although appellant requested the jury be given these definitions in the form of OUJI–CR 736, he did not object to the failure to give that instruction. Therefore, the alleged error is not preserved for review by this Court unless the failure to give the instruction constituted fundamental error. *See Wooldridge v. State,* 801 P.2d 729, 734 (Okl.Cr.1990). The jury was instructed as follows:

[E]vidence has been introduced that defendant had been drinking wine and using a drug called PCP. If you find from the evidence that because of his drinking wine and using PCP defendant was incapable of forming a deliberate intent to take the life of Ernestine Jones, then the element of malice aforethought has not been proved and the defendant is not guilty of murder in the first degree. You are further instructed that the burden is on the State of Oklahoma to prove beyond a reasonable doubt that the defendant acted with malice aforethought, and defendant has no burden to prove beyond a reasonable doubt his inability to form the required intent by reason of his use of drugs or alcohol.

In light of the instruction given, we do not find that the trial court's refusal to give appellant's requested instruction constitutes an error which went to the foundation of the case, or which took from the defendant a right which was essential to his defense. *Tobler v. State,* 688 P.2d 350, 353 (Okl.Cr.1984). Accordingly, this assignment of error is denied.

 In his tenth proposition of error, appellant contends the trial court erred in admitting the testimony of Officer Ronald Wortham, a technical investigator with the Oklahoma City Police Department. At trial, appellant objected to Officer Wortham's testimony concerning "geometric blood stain interpretation," because the prosecution failed to show the procedure is generally recognized in the scientific community. This Court considered a similar contention in *Farris v. State,* 670 P.2d 995 (Okl.Cr. 1983), and concluded the procedure is generally accepted in the scientific community. *Id.* at 997–98. Accordingly, we find the trial judge did not err in admitting the testimony of Officer Wortham.

 As part of this proposition, appellant contends it was error to allow Officer

Wortham to testify concerning shoe prints. Investigators took a picture of a bloody footprint found at the crime scene. Officer Wortham later placed the shoes, found in the storage shed, on a copy machine and made photocopies of the soles. The officer then compared the photo of the soles of the shoes with the photo of the footprint, and testified at trial that they "were consistent." Although the record does not support the conclusion that Officer Wortham was an expert in the field of shoe print comparisons, the testimony concerning the shoe print was rationally based on the officer's observation and perceptions and was helpful in the determination of a fact in issue. Thus, it was admissible under 12 O.S.1981, § 2701. *See Lee v. State*, 661 P.2d 1345, 1354 (Okl.Cr.1983)

■■■■ In his eleventh assignment of error, appellant contends he was denied a fair trial by the improper comments of the prosecutor during both stages of the trial. Many of the comments appellant cites as error were not objected to at trial. In such instances this Court will review only for fundamental error. *Huntley v. State*, 750 P.2d 1134, 1136 (Okl.Cr.1988). We find no such error. Most of the comments which were objected to at trial were reasonable comments on the evidence and do not constitute error. *Allen v. State*, 734 P.2d 1304, 1308 (Okl.Cr.1987). We agree that the prosecutor improperly attempted to evoke sympathy for the victim during second stage argument when he stated, "[h]e asked you for mercy. Where was mercy on February the 14th?" *See Stewart v. State*, 757 P.2d 388, 396 (Okl.Cr.1988). Defense counsel's objection to this comment should have been sustained, and the jury admonished to disregard it. Nor was it proper for the prosecutor to state "[l]adies and gentlemen, today, June 12th, 1987, [the date of the trial] ought to be Ernestine Jones' day...." While these comments are not to be condoned, we do not believe that they were so grossly improper that, in the absence of additional error, reversal or modification would be warranted. *See Fisher v. State*, 736 P.2d 1003, 1009 (Okl. Cr.1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988).

■■■ Appellant contends it was improper for the prosecution to comment on the failure to call certain witnesses. During first stage closing argument the prosecutor, Mr. Macy, stated: "[B]oth Defense and the State have the power of subpoena. If Leroy Trice—if Eddie Leroy Trice was intoxicated that night, where are the witnesses that say he was intoxicated? Surely somebody saw him." This Court has held it is improper for the prosecution to insinuate that certain witnesses were not called by the defense because they would have proved damaging to the defendant's position. *See Thompson v. State*, 462 P.2d 299, 304 (Okl.Cr.1969); *Watts v. State*, 137 P.2d 268, 272, 76 Okl.Cr. 362 (1942). However, the general rule in Oklahoma is that where a person might be a material witness on a defendant's behalf and the accused neither places him on the stand nor accounts for his absence, failure to produce him as a witness is a legitimate matter for comment during the State's argument. *Carol v. State*, 756 P.2d 614, 617 (Okl.Cr. 1988); *Black v. State*, 664 P.2d 1054, 1058 (Okl.Cr.1983); *Assadollah v. State*, 632 P.2d 1215, 1219 (Okl.Cr.1981); *Bernard v. State*, 538 P.2d 1109, 1112 (Okl.Cr.1975). We do not find the above referenced comment to be improper. *See Thomas v. State*, 811 P.2d 1337, 1343–44 (Okl.Cr. 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 895, 116 L.Ed.2d 798 (1992); *White v. State*, 726 P.2d 905, 907 (Okl.Cr.1986), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988).

## ISSUES RELATING TO PUNISHMENT

In support of its request that the death penalty be imposed, the State alleged the existence of five aggravating circumstances: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; (2) the defendant knowingly created a great risk of death to more than one person; (3) the murder was especially heinous, atrocious, or cruel; (4) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution; and (5) the

existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. *See* 21 O.S.1981, §§ 701.-12(1), (2), (4), (5), & (7), respectively. The only one of these aggravators the jury did not find present was number four, that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution.

 In his twelfth assignment of error, appellant claims that the second stage jury instructions violated the Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as the due process and equal protection[4] clauses of the Oklahoma Constitution. First, he contends the instructions failed to inform the jury that even if they found the mitigating circumstances did not outweigh the aggravating circumstances, they could still impose a life sentence.

 Second stage Instruction No. 8A informed the jury that if they were to "unanimously find one or more aggravating circumstance [sic] existed beyond a reasonable doubt and fail to find anything in mitigation," they could impose a sentence of death or life imprisonment. This instruction, which embodies a principle known as "jury nullification," did authorize the jury to impose a life sentence even if they determined that the aggravating circumstances outweighed the mitigating ones. Contrary to appellant's assertions, he did receive an instruction on jury nullification.

Secondly, appellant attacks the instructions because they failed to properly set forth the burden of proof regarding aggravating and mitigating evidence. Initially, he claims that the instructions failed to place the burden upon the State to prove that the mitigating factors were not outweighed by the aggravating circumstances. In conjunction with this assertion, he claims that the instructions failed to explain the standard of proof the State was

required to meet when proving that the mitigating factors did not outweigh the aggravating circumstances.

 We note at the outset the jury was repeatedly instructed that before they could consider any one of the aggravators as the basis for imposing the death penalty, they had to determine its existence beyond a reasonable doubt. *See* Instructions Nos. 3, 5, 8, 8A, and 9. Further, the State was not required to prove the mitigating factors were not outweighed by the aggravating circumstances. Specific standards for balancing aggravating and mitigating circumstances are not constitutionally required. *See Romano v. State,* 847 P.2d 368, 392 (Okl.Cr.1993); *Sellers v. State, supra,* 809 P.2d at 691. Rather, the jury has complete discretion to balance the aggravating circumstances against those in mitigation and determine whether one is outweighed by the other. *See Jones v. State,* 648 P.2d 1251 (Okl.Cr.1982), *cert. denied,* 459 U.S. 1155, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983). *See also* 21 O.S.Supp.1987, § 701.11. Appellant's twelfth assignment of error is denied.

 Appellant argues in his thirteenth proposition that the trial court committed fundamental error in failing to instruct the jury on the presumption of life. The trial court refused to administer appellant's proposed Instruction No. 2, which read as follows:

> During this sentencing hearing there is a presumption of mitigation that remains with the defendant throughout this hearing. This presumption of mitigation should be given effect by you unless and until after considering all of the evidence introduced before you, you are then convinced that the District Attorney has disproven the existence of each mitigating circumstance beyond a reasonable doubt.

The various cases appellant cites in support of this proposition address the principle that an accused is presumed innocent until

---

**4.** We note the due process provision in the Oklahoma Constitution does not specifically contain an equal protection clause. Notwithstanding the lack of specificity, we do find that the Okla-

homa due process provision does in fact encompass equal protection concepts. *See* Okla. Const. art. II, § 7.

proven guilty beyond a reasonable doubt. *See Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976); and, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Neither these cases nor any which we have discovered require that a jury be instructed on the presumption of a life sentence during the second stage of a capital trial.

Appellant's argument has been raised and rejected in several recent cases. *See Duvall v. State*, 825 P.2d 621, 634 (Okl.Cr. 1991); *Battenfield v. State*, 816 P.2d 555, 564 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1491, 117 L.Ed.2d 632 (1992). The jury in the instant case was properly instructed that appellant was presumed innocent of the charges alleged in the Bill of Particulars, and that he could not be sentenced to death unless it unanimously found beyond a reasonable doubt the existence of an aggravating circumstance. The jury was also instructed that it could not consider an aggravating circumstance the basis for imposing the death penalty, unless it first determined beyond a reasonable doubt that such circumstance outweighed the mitigating evidence. These instructions set forth the proper standards to guide the jury in its deliberations. Appellant's thirteenth proposition is denied.

■ In his fourteenth proposition of error, appellant attacks a first stage instruction in which the jury was told not to allow "sympathy, sentiment, or prejudice" to enter into its deliberations. Although this instruction was not specifically repeated during second stage proceedings, it was incorporated by reference into, and the jury was entitled to follow it during the penalty phase. Appellant claims this instruction could have led the jury to conclude that it could not consider any of the second stage mitigating factors which defense counsel presented in an effort to evoke sympathy for him. This argument was submitted and rejected in *Romano v. State, supra* at 392. *See also Fox v. State, supra*, 779 P.2d at 575. We are not now persuaded to alter our position on this issue. Accordingly, this proposition is denied.

In his fifteenth proposition, appellant asserts the trial court's instructions on aggravating and mitigating evidence set forth an improper burden of proof. One of appellant's requested but refused instructions would have allowed the jury to return a death sentence only if it found the mitigating evidence did not exist. The other instruction proffered would have allowed the jury to impose a sentence of death, but only if it was persuaded beyond a reasonable doubt that doing so would be justified and appropriate under the circumstances.

■ Appellant cites no authority to support the burden of proof described in his proffered instructions. While the State must prove beyond a reasonable doubt the existence of at least one of the enumerated aggravating circumstances, the determination of the weight to be accorded the aggravating and mitigating circumstances is not a fact which must be proved beyond a reasonable doubt. Instead, it is a balancing process. *Romano, supra* at 392, *quoting Johnson v. State*, 731 P.2d 993, 1005 (Okl.Cr.1987), *cert. denied*, 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987). *See also Thomas v. State, supra*, 811 P.2d 1337. As stated in response to appellant's thirteenth and fourteenth propositions, the instructions administered in this case properly guided the jury in its determination of the relative weight to be given the various mitigating and aggravating circumstances.

■ In his sixteenth proposition, appellant asks this Court to alter its position and hold the trial court must, during the sentencing phase, instruct the jury that it will impose a life sentence in the event the jury is unable to reach a unanimous verdict. We have rejected this instruction on the theory that administering it could distract the jury during the performance of its duty to assess the sentence. *Boltz v. State*, 806 P.2d 1117 (Okl.Cr.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 143, 116 L.Ed.2d 109 (1991); *Johnson, supra* at 1005. *See also Ellis v. State* (Okl.Cr.1992). Appellant has not persuaded us to change our position.

Appellant in his seventeenth proposition claims that the trial court erred in denying his motion for a separate jury to decide punishment. His premise is that juries from which some members have been excluded on the basis of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), are predisposed to return a verdict of guilt. Jurors excluded under *Witherspoon* are those "whose opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duties as jurors at the sentencing phase of the trial[.]" *Lockhart v. McCree*, 476 U.S. 162, 163, 106 S.Ct. 1758, 1760, 90 L.Ed.2d 137 (1986). If appellant's trial had been bifurcated, with one jury determining culpability and the other assessing punishment, only the penalty phase jury would have been subjected to questioning under *Witherspoon*. *See id.* 476 U.S. at 181–82, 106 S.Ct. at 1769. Under a bifurcated system, the guilt/innocence jury would not be culled pursuant to *Witherspoon* and would thus not be conviction prone.

Appellant's argument was explicitly rejected in *Lockhart, supra.* The majority in *Lockhart* held that removing jurors for cause under *Witherspoon* prior to the guilt phase of trial does not create a jury which is unconstitutionally slanted in favor of the prosecution. The Court concluded that single stage juries from which some jurors have been excluded pursuant to *Witherspoon,* represent a "fair-cross-section" of the community and can impartially determine guilt or innocence. This Court has also rejected appellant's argument. *See Devooght v. State*, 722 P.2d 705, 711 (Okl. Cr.1986). *See also Hager v. State*, 665 P.2d 319, 322–23 (Okl.Cr.1983). Accordingly, this proposition is denied.

In his eighteenth assignment of error, appellant contends that the jury was compelled to sentence him to death. He bases his proposition on three alleged problems with his trial: first, the trial court erred in instructing the jury it could not order his sentences to run consecutively; second, the trial court erred in refusing to allow the testimony of Betsy Paine during punishment phase; and third, Oklahoma's first degree murder statute unconstitutionally mandates that juries sentence capital defendants to death. We will address these alleged errors individually.

Appellant first claims that the sentencing stage was rendered unreliable by the trial court's instruction to the jury that it could not specify appellant's sentences be served consecutively. Approximately two and one-half hours into its second stage deliberations, the jury sent the trial judge a note asking: "Can we specify that the sentences we give will be served consecutively (one after the other)?" The trial judge, after a discussion with the district attorney and defense counsel and over defense counsel's objection, responded with a note stating: "Members of the jury, you may not specify that the sentences you give will be served consecutively." (Court's Exhibit 6). Appellant argues the jury could have interpreted the trial judge's response to mean that he might not receive consecutive life sentences. Reacting to its interpretation of the trial judge's message, appellant argues, the jury increased the terms of imprisonment for the non-capital crimes and sentenced appellant to death rather than to life imprisonment for murder. We disagree.

Under the Eighth Amendment, the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination. *See Johnson v. Mississippi*, 486 U.S. 578, 584, 108 S.Ct. 1981, 1986, 100 L.Ed.2d 575 (1988); *Beck v. Alabama*, 447 U.S. 625, 637–38, 100 S.Ct. 2382, 2389–90, 65 L.Ed.2d 392 (1980); *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977). Under the circumstances of this case, however, we cannot say the sentences imposed failed to meet this exacting standard. Appellant's jury sentenced him to nine-hundred-ninety-nine (999) years imprisonment on each of the three non-capital counts, and to death on the one count of first degree murder. There is no indication from these sentences the jury *would have given* appellant life imprisonment on the murder conviction had they not been in-

formed they could not run all the sentences consecutively.

This was not a case in which appellant was being tried and sentenced on several counts of first degree murder. If a jury in that instance were to ask the trial judge about its ability to sentence to consecutive terms, one could infer that such a jury was considering sentences of life imprisonment rather than death for the murder convictions. Because the jury in the instant case had the task of sentencing appellant for three non-capital offenses as well as for first degree murder, it is likely that its concern—as evidenced by the note to the trial judge—was whether it could require the sentences for the non-capital offenses to run consecutively. Accordingly, we conclude that no error occurred as a result of the exchange between the trial judge and the jury.

We recognize this Court's responses to claims of improper post-deliberation instructions have been neither consistent nor clear. See *Miller v. State*, 751 P.2d 733, 740 (Okl.Cr.1988) (Noting defendant's lack of objection, trial judge's negative response to inquiries concerning consecutive sentences and parole procedures held not error); *Trevino v. State*, 737 P.2d 575, 577 (Okl.Cr.1987) (Noting defendant's lack of objection, trial judge's response to questions on probation and suspended sentences held not error); *Goodwin v. State*, 730 P.2d 1202, 1205 (Okl.Cr.1986) (Noting defendant's lack of objection, trial judge's response to question on concurrent sentences held not error where jury was informed that it was not to consider the matter); *Rice v. State*, 666 P.2d 233, 235 (Okl.Cr. 1983) (Trial judge reasonably followed the preferred procedure of telling jury that it had all the instructions and that its questions could not be answered); *Camp v. State*, 664 P.2d 1052, 1054 (Okl.Cr.1983) (Failure to grant motion for mistrial proper where in response to jury's questions, trial judge stated he could not answer the questions and that jury was not to consider pardon and parole); *Irvin v. State*, 617 P.2d 588, 600 (Okl.Cr.1980) (No error occurred where trial judge instructed jury that it was not to consider pardon and

parole); *Reynolds v. State*, 575 P.2d 628, 633 (Okl.Cr.1978) (Noting defendant's lack of objection, no error occurred where trial judge informed jury that pardon and parole was a matter for the Executive Branch); *Gaines v. State*, 568 P.2d 1290, 1292 (Okl. Cr.1977) (Noting defendant's lack of objection, no error occurred where trial judge responded that the jury was not to consider parole); *Newsom v. State*, 519 P.2d 550, 551 (Okl.Cr.1974) (Trial court's explanation of parole procedures not error in light of entire record); *Jennings v. State*, 500 P.2d 871, 872 (Okl.Cr.1972) (Trial judge's oral explanation concerning the possibility of suspended sentence held reversible error); *Beets v. State*, 449 P.2d 903, 905 (Okl.Cr. 1969) (Trial judge's explanation of parole procedures was error but not reversible in light of admonishment that jury not consider the matter); *French v. State*, 397 P.2d 909, 912–13 (Okl.Cr.1964) (Trial judge's oral instruction defining life imprisonment held error). Specifically, an issue which regularly appears before this Court is whether a trial judge properly responded to a deliberating jury's question concerning the power to run sentences consecutively. Given the confusion surrounding the general issue of judge and jury communications, and the frequency with which the particular jury communication issue in this case is raised on appeal, we are compelled to clarify the proper procedure a trial judge should follow under circumstances like those presented in the instant case.

 When a deliberating jury seeks information concerning its power to run sentences consecutively, the trial judge should respond by stating that all the information needed to make the decision is contained in the instructions. The giving of such an instruction, we have held, creates a presumption that the jury acted in accordance with it. See *Jones v. State*, 764 P.2d 914 (Okl.Cr.1988); *Kemp v. State*, 632 P.2d 1239, 1241 (Okl.Cr.1981). Such an instruction enables the trial court to respond and reiterate the propriety of the written instructions already administered, without providing new, potentially prejudicial information.

■ Appellant's second subproposition claims the trial judge erred in refusing to allow the testimony of Betsy Paine during the penalty phase of trial. At the time of trial, Ms. Paine was the executive director of the state pardon and parole board. Appellant wanted Ms. Paine to inform the jury how many years a defendant who received consecutive life sentences would actually spend in prison. He concedes this Court's longstanding position that references to pardon and parole during trial are impermissible, but argues that this type of evidence should be allowed when offered by the defense. We decline to adopt appellant's theory. Whether offered by the defense or the prosecution, evidence concerning parole policies and procedures is not permitted. *See Walker v. State*, 723 P.2d 273 (Okl.Cr.1986), *cert. denied*, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600 (1986); *Wright v. State*, 617 P.2d 1354, 1355 (Okl. Cr.1979).

In his third subproposition, appellant claims that 21 O.S.Supp.1987, § 701.9(A), is unconstitutional. At the time of appellant's trial,[5] section 701.9(A) provided that those convicted of or who plead guilty or nolo contendere to first degree murder "shall be punished by death or by imprisonment for life." According to appellant, the "imprisonment for life" option is in reality no option at all. Because the average juror thinks a sentence of life imprisonment would not render a capital defendant imprisoned for the rest of his or her life, jurors generally do not consider selecting this alternative to the death penalty.

■ When appellant received his first degree murder sentence in this case, section 701.9(A) permitted the jury to choose life imprisonment or death. Based upon the statutory language alone, it is clear that appellant's death penalty was not mandatory and thus not violative of the United States Supreme Court's holding in *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976). Further, appellant has not provided any substantial

proof the jury in this case was doubtful about the actual longevity of a sentence of life imprisonment and thus predisposed to impose the death penalty. This contention is meritless.

■ Appellant argues in his nineteenth proposition that the aggravating circumstance "defendant knowingly created a great risk of death to more than one person" is unconstitutionally vague. Citing *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988), he contends this Court should narrow the application of this aggravator in order to properly guide juries in their effort to determine what conduct fits within its scope. Appellant cites a number of this Court's opinions in which the jury's finding of this aggravator was upheld. The defendants in those particular cases used and threatened others with guns. Because appellant's weapon of choice was nunchakus, and because he only severely injured the son of the woman he killed, he argues the proof in his case did not rise to the level of proof generally necessary to support a finding of the "great risk of death to more than one person" aggravator.

In addressing a vagueness attack upon the "heinous, atrocious, or cruel" aggravating circumstance, the Supreme Court in *Cartwright, supra,* stated the following:

Claims of vagueness directed at aggravating circumstances defined in capital punishment statutes are analyzed under the Eighth Amendment and characteristically assert that the challenged provision fails adequately to inform juries what they must find to impose the death penalty and as a result leaves them and appellate courts with the kind of open-ended discretion which was held invalid in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

*Cartwright* 486 U.S. at 361–62, 108 S.Ct. at 1858. The Court in *Cartwright* struck down Oklahoma's "heinous, atrocious, or cruel" aggravator because it was overbroad. Juries were not given any guidance

---

5. In November of 1987, several months after appellant's trial in the instant case, the Oklahoma Legislature amended section 701.9(A) to include the sentencing option "imprisonment for life without parole."

concerning the meaning of any of the terms of this aggravator, and this Court on review failed to place any limiting construction upon it.

The "great risk of death to more than one person" aggravator appellant now attacks does not suffer from the same linguistic problems which rendered the "heinous, atrocious, or cruel" aggravator unconstitutional.[6] By its own terms, the "great risk of death" aggravator has limited application. Further, this Court in *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980), *cert. denied*, 450 U.S. 1025, 101 S.Ct. 1731, 68 L.Ed.2d 219 (1981), determined this aggravator is not unconstitutionally vague. Appellant's proposition is denied.

Appellant's claim in his twentieth proposition is twofold. First, he claims his Eighth and Fourteenth Amendment rights were violated because the same criminal conduct was presented to the jury in support of two of the five alleged aggravating circumstances. Second, appellant argues Oklahoma is applying the "continuing threat" aggravator in the same overbroad manner which led to the demise of the former "heinous, atrocious, or cruel" aggravating circumstance in *Cartwright, supra*. This Court squarely addressed appellant's first contention in the recent case of *Smith v. State*, 819 P.2d 270, 278 (Okl.Cr. 1991), *cert. denied*, — U.S. —, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992). The defendant in *Smith* argued, as appellant does now, that the same evidence—namely, prior violent felony convictions—was presented to the jury in support of both the "prior violent felony conviction" and "continuing threat" aggravating circumstances. We upheld the finding of both aggravators in *Smith,* reasoning that each of the aggravators alleged were presented to and in fact did show different aspects of "the individual offense and the individual offender...." *Green v. State*, 713 P.2d 1032, 1040 (Okl. Cr.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986), *quoting Jurek v. Texas*, 428 U.S. 262, 274, 96 S.Ct. 2950, 2957, 49 L.Ed.2d 929 (1976). Further,

while defendant's prior violent felony convictions were used to support both of these aggravating circumstances, evidence of the crime itself was also argued to support the "continuing threat" aggravator. *See Smith, supra* at 278–79. *See also Van-Woundenberg v. State*, 720 P.2d 328 (Okl. Cr.1986), *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

■ We find *Smith* to be dispositive. Appellant correctly asserts the State, in its Notice of Evidence of Aggravation to be Offered in Support of the Death Penalty, listed his prior rape conviction in support of both the "prior violent felony" and "continuing threat" aggravators. What appellant fails to mention, however, is that the State also alleged and argued the following evidence in support of the "continuing threat" aggravating circumstance: the brutal nature of the killing; four (4) prior felony convictions; appellant's skill in handling nunchakus, and habit of carrying them and a knife with him; and, appellant's actions after the killing, including boasting about the crime and using money obtained from the victims to purchase illegal drugs. These separate and distinct aggravators, presented to show different aspects of appellant and his crime, were each clearly supported by independent, admissible evidence.

■ In his second argument under proposition twenty, appellant claims that Oklahoma applies the "continuing threat" aggravator in an arbitrary and thus unconstitutional manner. Appellant cites numerous cases in which juries' findings of this aggravator have been upheld on appeal. Because several of those cases involved defendants with a criminal history more violent than his, appellant concludes that juries are being allowed "unlimited, unbridled discretion" in determining the existence of the "continuing threat" aggravator. We disagree.

The "continuing threat" aggravator has been consistently affirmed by this Court as

---

**6.** Interestingly, the other aggravator found by the jury in *Maynard v. Cartwright* was "knowingly created a great risk of death to more than

one person." This aggravator was not challenged in that case.

" 'clear enough that it does not need to be further defined.' " *Berget v. State,* 824 P.2d 364, 374 (Okl.Cr.1991), *quoting Van-Woundenberg, supra,* 720 P.2d at 337. *See also Ellis, supra; Workman v. State,* 824 P.2d 378, 383 (Okl.Cr.1991). Appellant's alleged history of violence was not the only evidence presented to support this aggravating circumstance. The killing itself was sufficient to show that he constitutes a continuing threat to society. *See Berget, supra* at 375. *See also Fisher v. State, supra,* 736 P.2d at 1009; *Robison v. State,* 677 P.2d 1080, 1088 (Okl.Cr.1984). Appellant's constitutional attack upon Oklahoma's application of the "continuing threat" aggravating circumstance is meritless.

■ In his twenty-first assignment of error, appellant contends the jury was given the same instruction on the "heinous, atrocious or cruel" aggravating circumstance that was held unconstitutionally vague in *Cartwright, supra.* We agree. The jury was instructed as follows:

> As used in these instructions, the term "Heinous" means extremely wicked or shockingly evil; "Atrocious" means outrageously wicked and vile; "Cruel" means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.

The jury did not receive the language contained in the second paragraph of OUJI–CR 436 (1981), which stated as follows:

> The phrase "especially heinous atrocious or cruel" is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse.

In the absence of the additional, narrowing instruction, the sentencer's discretion in imposing the death penalty was not properly channeled. *See Cartwright, supra. See also Stouffer v. State,* 742 P.2d 562, 563 (Okl.Cr.1987) (Opinion on reh'g). Because the jury based its finding of the "heinous, atrocious, or cruel" aggravator on an unconstitutionally vague instruction, this aggravator must fail.

■ When an aggravating circumstance is held invalid, this Court has the authority to review any remaining aggravating circumstances along with the mitigating evidence to determine the validity of the death sentence. *See Ellis, supra; VanWoundenberg v. State,* 818 P.2d 913, 916 (Okl.Cr.1991). To pass muster under the Eighth Amendment, this determination must entail either reweighing the valid aggravators against the evidence in mitigation, or conducting a harmless error analysis. *See Richmond v. Lewis,* —— U.S. ——, ——, 113 S.Ct. 528, 535, 121 L.Ed.2d 411 (1992); *Clemons v. Mississippi,* 494 U.S. 738, 739–40, 110 S.Ct. 1441, 1444, 108 L.Ed.2d 725 (1990). Further, the United States Supreme Court recently has held that the process by which state courts determine whether a failed aggravator requires reversal of a death sentence must include "a thorough analysis of the role an invalid aggravating factor played in the sentencing process." *Stringer v. Black,* 503 U.S. ——, ——, 112 S.Ct. 1130, 1136, 117 L.Ed.2d 367 (1992). "Close appellate scrutiny of the import and effect of invalid aggravating factors [is required] to implement the well-established Eighth Amendment requirement of individualized sentencing determinations in death penalty cases." *Id. See also Richmond v. Lewis, supra.* Under both *Richmond* and *Stringer,* this Court must in essence determine what the jury in this case would have decided had it not considered the invalid "heinous, atrocious, or cruel" aggravator. *Stringer, supra,* 503 U.S. at ——, 112 S.Ct. at 1137. *See also Stout v. State,* 817 P.2d 737, 739 (Okl.Cr.1991).

■ In this case, appellant raped and savagely bludgeoned to death eighty-four-year old Ernestine Jones. He beat her mentally retarded son so severely that he eventually lost an eye. After this brutal attack, appellant fled with $300.00. Further, appellant stipulated to five former felony convictions, some of which were for the offenses of rape and burglary. In addition to the failed "heinous, atrocious or cruel" aggravating circumstance, the jury in the instant case found beyond a reasonable doubt the existence of the following

three aggravators: that appellant was previously convicted of a violent felony; that he knowingly created a great risk of death to more than one person; and, that he would probably commit future criminal acts of violence which would constitute a continuing threat to society. *See* 21 O.S.Supp.1981, §§ 701.12(1), (2), and (7), respectively.

The jury was also bound to consider any mitigating evidence presented during trial. Instruction No. 7, administered during the penalty phase, set forth eleven (11) mitigating circumstances specifically presented on appellant's behalf: his step-father physically abused him as a child; he was raped when he was five or six years old; many friends and family members would write to and come and visit him if he were to receive a life sentence; he had taken drugs and consumed a large quantity of alcohol prior to committing the subject offenses; he cooperated with the police after his arrest; he was not shown to be less than a model prisoner while in the county jail; he is an alcoholic; he left home at about age sixteen; he dropped out of high school, but later obtained a General Education Development Certificate; he behaved himself during trial; and, as a youth, he worked at a service station for eight years.

After careful review and consideration of the evidence supporting the three valid aggravating circumstances, as well as the first and second stage evidence which may be considered mitigating, we find the sentence of death factually substantiated and appropriate. While ample evidence was presented to support the three valid aggravating circumstances, the proffered mitigating factors were relatively weak. Perhaps most importantly, very little of the State's closing argument was devoted to describing evidence of the failed "heinous, atrocious, or cruel" aggravator. Clearly, the jury's improper consideration of this aggravator did not play a significant role in its decision to sentence appellant to death. The jury's consideration of the unconstitutional aggravator was at most harmless error. *See Stafford v. State,* 815 P.2d 685, 689 (Okl.Cr.1991).

Appellant argues in his final assignment of error that he is entitled to have his death sentence modified to life imprisonment because of the invalidity of the "heinous, atrocious, or cruel" aggravator. He claims that this Court may not reweigh the aggravating and mitigating circumstances and affirm his death sentence, because to do so would usurp the jury's function. Appellant also contends that because this Court did not engage in reweighing at the time he committed the offenses, to reweigh now would violate the state and federal constitutional prohibitions against *ex post facto* laws. This Court has clearly rejected both of these arguments. *See Stafford, supra,* 815 P.2d at 687–88. *See also VanWoundenberg, supra,* 818 P.2d at 916–17. Appellant's final proposition is denied.

## MANDATORY SENTENCE REVIEW

Pursuant to 21 O.S.Supp.1987, § 701.13(C), we must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor, and (2) whether the evidence supports the jury's finding of an aggravating circumstance as enumerated in 21 O.S.Supp.1981, § 701.12. As noted above, the "heinous, atrocious or cruel" aggravating circumstance fails because it was submitted to the jury upon an unconstitutionally vague instruction. After carefully reweighing the remaining aggravators and all mitigating evidence, we have determined that the valid aggravators upon which the death penalty was based were factually substantiated. We further find no indication in the record that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor.

Finding no basis for reversal or modification, the judgment and sentence is **AFFIRMED.**

LUMPKIN, P.J., JOHNSON, V.P.J., and LANE, J., concur.